CLAUDIA EMERICK *v.* ROGER EMERICK
(10682)

NORCOTT, LANDAU and HEIMAN, Js.

Argued June 9—decision released September 1, 1992

*Roger Emerick,* pro se, the defendant (appellant).

*Lloyd Frauenglass* filed a brief for the appellee (plaintiff).

HEIMAN, J. The defendant, Roger Emerick, appeals from the trial court's judgment denying his motion to modify his child support payments and the trial court's finding of contempt. He claims that the trial court improperly (1) enforced a prior child support order, (2) awarded counsel fees to the plaintiff, (3) held a hearing on the plaintiff's motion for contempt without advising the defendant of his right to counsel, (4) refused to allow him a continuance for the purpose of securing counsel, (5) enforced a prior child support order even though the court's ability to enforce prior orders regarding visitation was foreclosed by the plaintiff's actions, (6) refused to permit the judge who presided over the underlying dissolution action to testify as to the meaning of certain orders entered by him, and (7) denied his application for costs. We reverse the trial court's finding of contempt, together with the orders relating to it, and affirm the judgment in all other respects.

The history of the parties' marriage and the course of the litigation leading up to the judgment dissolving that marriage is set forth in this court's opinion resolving the parties' appeals from the judgment dissolving the marriage and entering consequential orders. See *Emerick* v. *Emerick,* 5 Conn. App. 649, 502 A.2d 933, cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986); see also *Emerick* v. *Emerick,* 17 Conn. App. 811, 551 A.2d 36 (1988) (per curiam), cert. denied, 210 Conn. 811, 556 A.2d 609 (1989) ( the defendant's appeal from numerous postappeal and postjudgment motions involving claims for modification of custody, financial awards, counsel fees and in defense of contempt orders regarding his failure to comply with financial orders of the

dissolution court). When the court dissolved the parties' marriage, it ordered the defendant to pay the plaintiff $115 per week for the support of their one minor child. The defendant's failure to comply with this child support order generated the motions at issue in this case.

I

We turn first to the defendant's claim that the trial court improperly held him in contempt of court because it failed to advise him of his right to counsel in a contempt proceeding in which he faced potential incarceration, and, in the event that he was found to be indigent, to appointed counsel. He asserts that the trial court's failure to advise him of these rights requires that we reverse the trial court's finding of contempt as well as its finding that an arrearage existed with respect to the child support payments. We agree.

"Civil contempt is 'conduct directed against the rights of the opposing party. *Bessette* v. *W. B. Conkey Co.,* 194 U.S. 324, 328, 24 S. Ct. 665, 48 L. Ed. 2d 997 [1904]; *Welch* v. *Barber,* [52 Conn. 147, 157 (1884)].' *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352, 321 A.2d 462 (1973)." *Connolly* v. *Connolly,* 191 Conn. 468, 482, 464 A.2d 837 (1983). One of the remedies available to a court that finds a party in civil contempt due to that party's failure to pay court ordered support or alimony is the confinement of the contemnor until the contempt is purged. See General Statutes § 46b-87.

The due process clause of the fourteenth amendment to the United States constitution guarantees the right to appointed counsel to any indigent civil contemnor who might be incarcerated. *Ridgway* v. *Baker,* 720 F.2d 1409, 1413 (5th Cir. 1983); *United States* v. *Bobart Travel Agency, Inc.,* 699 F.2d 618, 620 (2d Cir. 1983); *Mastin* v. *Fellerhoff,* 526 F. Sup. 969, 973 (S.D. Ohio

1981); see also *Lake* v. *Speziale,* 580 F. Sup. 1318, 1341–42 (D. Conn. 1984). This right to counsel is merely a logical extension of the right to counsel in criminal cases in which an accused is incarcerated. *Ridgway* v. *Baker,* supra; *United States* v. *Bobart Travel Agency, Inc.,* supra; see also *Argersinger* v. *Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); *Gideon* v. *Wainright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). The courts' recognition of a due process right to counsel in civil contempt cases in which the contemnor might be imprisoned reflects a judgment that "it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments' right to counsel in criminal cases, which triggers the right to appointed counsel . . . ." *Mastin* v. *Fellerhoff,* supra; see also *Lassiter* v. *Department of Social Services,* 452 U.S. 18, 25, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); *In re Gault,* 387 U.S. 1, 34–42, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1966); *Ridgway* v. *Baker,* supra. Thus, cases discussing the nature of the sixth amendment right to counsel in criminal cases are instructive regarding the scope of the fourteenth amendment right to counsel in civil contempt cases in which a litigant might be incarcerated.

The trial court has an obligation to inform the potential contemnor of his right to appointed counsel to ensure that any waiver of the right to counsel is intelligent and competent. *In re Jessen,* 738 F. Sup. 960, 963 (W.D.N.C. 1990); see *Johnson* v. *Zerbst,* 304 U.S. 458, 465, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake— is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may

waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record." *Johnson* v. *Zerbst,* supra.

Practice Book § 484A implements the right to court appointed counsel in civil contempt proceedings.[1] It provides in pertinent part: "A person who is before the court in a civil contempt proceeding involving the failure to comply with a court order in a family relations case and who faces potential incarceration shall be advised of his right to be represented by counsel and his right to court appointed counsel if he is indigent." This rule imposes two duties on the trial court. First, each person appearing before the court in a civil contempt proceeding must be advised of his or her right to counsel. Second, counsel must be appointed for each indigent potential contemnor who might be incarcerated if found in contempt.

Here, the trial court did not advise the defendant of either his right to be represented by counsel or his right to appointed counsel in the event that he was indigent.

[1] The rule apparently was adopted in response to the United States District Court's decision in *Lake* v. *Speziale,* 580 F. Sup. 1318 (D. Conn. 1984). *Lake* involved an application for a preliminary injunction brought by a class of persons who were or would have been facing incarceration after being adjudicated in civil contempt for the failure to comply with support orders. The defendant class consisted of the judges of the Connecticut Superior Court. The injunction sought by the plaintiffs would have required the judges of the Superior Court "to advise each and all members of the putative plaintiff class of their right to counsel and of their right to appointed counsel if found to be indigent in such civil contempt proceedings." Id., 1320. The plaintiffs' claim was based primarily on the due process clause of the fourteenth amendment to the United States constitution. On February 22, 1984, the court, after concluding that the plaintiffs had established a "high probability" of success on the merits of their case, granted the plaintiffs' application. Id., 1340-42.

Practice Book § 484A was adopted effective October 1, 1984, and, on July 9, 1985, the United States District Court vacated the preliminary injunction.

The trial court also failed to state on the record that it had eliminated incarceration as a possible penalty in the event that the defendant was adjudicated in contempt. The trial court's failure so to advise the defendant ran afoul of both the fourteenth amendment to the United States constitution and Practice Book § 484A.

Where a trial court has failed to inform a defendant of his constitutional right to appointed counsel, we will not attempt to discern whether the error was harmless. Such failure is reversible error. See *Johnson* v. *Zerbst,* supra; *In re Jessen,* supra; see also *Argersinger* v. *Hamlin,* supra (no harmless error analysis where a criminal defendant was deprived of his constitutional right to counsel); *Gideon* v. *Wainright,* supra (no harmless error analysis where a criminal defendant was deprived of his constitutional right to counsel). The failure to advise the defendant properly is fatal not only to the finding of contempt, but also to the orders related thereto: the order for the payment of counsel fees arising out of the finding of contempt, the finding that an arrearage existed and the order to pay the arrearage.

II

We turn next to the defendant's claim that the trial court improperly ordered the enforcement of the support order. Reduced to its essence, the defendant's claim appears to be that the plaintiff's removal of their daughter to Brazil, which he claims was in violation of the dissolution court's orders, had two legal consequences: it required the trial court to grant his motion to modify his child support payments and relieved him of his obligation to comply with the dissolution court's child support order. We are not persuaded by his arguments.

The following background is necessary to resolve the defendant's claims. At the hearing on the plaintiff's motion for contempt, the defendant claimed that in Sep-

tember, 1985, the plaintiff willfully removed their child to Brazil in violation of the dissolution court's order that neither party permanently remove the child from Connecticut. He also claimed that the removal of the child to Brazil violated the dissolution court's order allowing a party to remove the child from Connecticut only when such removal does not interfere with the court ordered visitation. He argues that the plaintiff's violation of the dissolution court's orders excuses him from complying with his support obligation. A close reading of the judgment file, as corrected by the trial court after remand from this court, however, does not support the defendant's assertion that a specific order forbidding the removal of the child from the state of Connecticut exists. Although the original judgment provided that removal of the child from Connecticut would effectuate a change of custody, that clause in the judgment was stricken in accordance with the remand from this court. See *Emerick* v. *Emerick,* supra, 5 Conn. App. 649. The corrected judgment merely provides that during periods of visitation the child may be removed for travel with the parent, that the child may be removed from Connecticut for any other periods that do not conflict with either the other party's visitation rights or the child's education and that the state of Connecticut shall retain jurisdiction over all matters concerning the dissolution, including matters of custody. No specific prohibition exists barring the child's permanent removal from Connecticut.

We turn first to the trial court's ruling on the defendant's motion for modification of support. The defendant claims that the plaintiff's removal of their child to Brazil constituted a substantial change in circumstances that required the trial court to modify his support payments. See General Statutes § 46b-86. He admits, in his brief, that he offered the trial court no evidence regarding the child's financial needs since being taken

to Brazil. The burden is on the party seeking modification to show the existence of a substantial change in circumstances. *Bunche* v. *Bunche,* 180 Conn. 285, 290, 429 A.2d 874 (1980). Further, the trial court has broad discretion in determining whether a substantial change in circumstances exists. *Palazzo* v. *Palazzo,* 9 Conn. App. 486, 488–89, 519 A.2d 1230 (1987). Here, the trial court acted well within its discretion when it determined that the mere fact that the defendant's daughter has moved to Brazil did not justify a modification of his support payments. See *Raymond* v. *Raymond,* 165 Conn. 735, 742, 345 A.2d 48 (1974).

The defendant next claims that the plaintiff's failure to comply with the dissolution court's orders regarding the child's residence and his rights to visitation required the trial court to modify his support payments. We need not decide whether the plaintiff violated any orders of the dissolution court. "It has never been our law that support payments were conditioned on the ability to exercise rights of visitation or vice versa." *Raymond* v. *Raymond,* supra. Rather, "[t]he duty to support is wholly independent of the right of visitation." Id. Thus, even if the plaintiff had violated certain orders of the dissolution court regarding the defendant's right of visitation, the defendant would not have been entitled to a modification of support on that basis.

The defendant next claims that the trial court should not have enforced the dissolution court's support orders because the plaintiff was equitably estopped from collecting child support. " 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.' 3 Pomeroy, Equity

Jurisprudence (5th Ed. 1941) § 804, p. 189; 28 Am. Jur. 2d, Estoppel and Waiver § 76; accord *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565 (1961); *Tradesmens National Bank of New Haven* v. *Minor,* 122 Conn. 419, 424, 190 A. 270 (1937); *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 548, 173 A. 783 (1934). Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done. *Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777 (1968); *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797 (1962); see *Bealle* v. *Nyden's, Inc.,* 245 F. Sup. 86, 93–94 (D. Conn. 1965); 28 Am. Jur. 2d, Estoppel and Waiver § 27, p. 627." *Bozzi* v. *Bozzi,* 177 Conn. 232, 241–42, 413 A.2d 834 (1979).

The trial court rejected the defendant's equitable estoppel claim, finding that the defendant's decision not to pay child support was voluntary and was based on his view that removal of his child to Brazil was illegal. Thus, the trial court concluded, the defendant did not act in reliance on the plaintiff's acts. Our review of the record discloses that this factual determination was not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Thus, the defendant cannot prevail on this claim.

The defendant also claims that the plaintiff was guilty of laches in waiting approximately six years from the time that the defendant ceased complying with the support order before attempting to enforce it. This, he claims, precluded the trial court from enforcing his support obligation. "Laches consists of two elements. 'First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the

defendant.' *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906 (1955); *Kievman* v. *Grevers,* 122 Conn. 406, 411, 189 A. 609 (1937); 27 Am. Jur. 2d, Equity § 152. The mere lapse of time does not constitute laches; *Finucane* v. *Hayden,* 86 Idaho 199, 206, 384 P.2d 236 (1963); 27 Am. Jur. 2d, Equity § 163; unless it results in prejudice to the defendant; see *Leary* v. *Stylarama of New Haven, Inc.,* 174 Conn. 217, 219, 384 A.2d 377 (1978); *Bianco* v. *Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969); as where, for example, the defendant is led to change his position with respect to the matter in question. *Pukas* v. *Pukas,* 104 R.I. 542, 545–46, 247 A.2d 427 (1968)." *Bozzi* v. *Bozzi,* supra, 239.

The trial court determined that in view of the "sequence of events, the number of different lawsuits [and] their nature and volatility," the plaintiff's delay in seeking to enforce the defendant's support obligation was excusable. Further, the trial court found that the defendant was not prejudiced by the delay because he decided not to pay child support at the time that the child was removed from Connecticut. Our review of the record indicates that the trial court acted well within its broad discretion in making these findings. See *Bozzi* v. *Bozzi,* supra, 240.

The defendant also asserts that the trial court improperly issued a wage execution to ensure the payment of future support. Again, he premises his objection on the claim that the plaintiff's actions should preclude her from collecting support. We have already pointed out that our law is to the contrary. See *Raymond* v. *Raymond,* supra; *Bozzi* v. *Bozzi,* supra. In addition, the issuance of a wage execution is mandated by General Statutes § 52-362 (b).[2]

---

[2] General Statutes § 52-362 (b) provides in pertinent part: "The superior court . . . shall issue an order for withholding pursuant to this section

The defendant next claims that the trial court should not be permitted to enforce the order of support by finding him in civil contempt because, as explained above, he feels that the plaintiff's malfeasance excused him from complying with the support order in the first instance.[3] Thus, he argues, he cannot be held in contempt due to a failure to comply with an unenforceable order. As we have noted, however, the support order was enforceable despite the plaintiff's actions because the right of visitation and the obligation of support are wholly independent. *Bozzi* v. *Bozzi,* supra, 237–38; *Raymond* v. *Raymond,* supra.

For this reason, his claim that the trial court improperly failed to modify his support payments retroactively also must fail. Indeed, retroactive modification of an existing support order also is prohibited by General Statutes § 46b-86 (a).[4] The trial court properly concluded that it was obligated to enforce the dissolution court's support orders.

The defendant can prevail on none of those claims.

## III

The defendant next asserts that the trial court violated his civil rights by enforcing the support order because the enforcement of the orders concerning cus-

---

against the earnings of an obligor to enforce a support order when the support order is entered or modified or when the obligor is before the court in an enforcement proceeding. . . ."

[3] Although we have reversed the trial court's finding of contempt, we review this claim because it is likely to arise on remand. See *Falby* v. *Zarembski,* 221 Conn. 14, 26–27, 602 A.2d 1 (1992).

[4] General Statutes § 46b-86 (a) provides in pertinent part: "No order for periodic payment of . . . support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of . . . support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50."

tody and visitation were unenforceable by virtue of the plaintiff's actions. The defendant provides us with no legal authority, and we know of none, for the proposition that these or similar circumstances implicate the defendant's civil rights. Further, as we have already stated, orders regarding visitation and support are mutually independent. The fact that a party is deprived of the right of visitation does not excuse a failure to pay support. See *Bozzi* v. *Bozzi*, supra; *Raymond* v. *Raymond*, supra. This claim is meritless.

IV

The defendant claims that the trial court improperly refused to permit the judge who presided over the dissolution proceedings to testify as to the meaning of certain orders he entered regarding the child's residence and the defendant's support obligation and visitation rights. We are unpersuaded.

"The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Citations omitted; internal quotation marks omitted.) *Lashgari* v. *Lashgari*, 197 Conn. 189, 196, 496 A.2d 491 (1985). Our inquiry in interpreting the meaning of judgments is limited to that which is either expressed or implied clearly. Id., 197. Simply put, the issue is not the trial court's unstated intention but the intention of the trial court as gathered from all parts of the written judgment. Id., 196–97. Thus, the trial court properly ruled that the testimony of the judge who presided over the dissolution proceedings regarding his intent in entering the orders could not be considered in construing the dissolution judgment, and properly excluded that testimony on this point.

## V

The defendant next claims that the trial court improperly ruled on the parties' motions after hearing a settlement offer made by the defendant in open court. We disagree.

The following facts are necessary to resolve this claim. On May 17, 1991, at a hearing before the trial court, the defendant requested a settlement conference to be held in chambers. The trial court denied his request and told the defendant that it would hear any settlement offer on the record. When the defendant protested, the trial court assured him that it would not penalize him for making any such offer. The defendant then articulated a settlement offer, but withdrew the offer after a colloquy with the court.

The defendant claims that the trial court should not have ruled on the parties' motions after hearing his settlement offer. He further claims that the trial court penalized him for making the offer.

In arguing that the trial court should not have ruled on the motions after hearing the settlement offer, the defendant relies exclusively on *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 236 A.2d 466 (1967). In *Krattenstein,* our Supreme Court held that, although the proper course is for a judge to decline to preside over a trial where that judge also has conducted a settlement conference between the parties, the parties waived any objection to such procedure by failing to make a motion that the judge disqualify himself. Thus, even if *Krattenstein* applies to hearings on postjudgment motions, and even if it applies where a settlement offer is made on the record in open court, matters that we do not decide today, the defendant cannot prevail because he, like the plaintiffs in *Krattenstein,* failed to make a motion to disqualify the trial judge. Claims

alleging judicial bias are deemed to have been waived where they were not raised at trial by a motion for disqualification. *Cahn* v. *Cahn,* 26 Conn. App. 720, 732, 603 A.2d 759 (1992), cert. granted on other grounds, 221 Conn. 924, 608 A.2d 688 (1992).

The defendant's unsupported assertion that the trial court penalized him for his settlement offer must be rejected as well. The appellant bears the burden of supplying us with a record adequate to review his claims. *Kaplan* v. *Kaplan,* 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982). The defendant's failure either to make a motion for disqualification or otherwise to develop the record to support his allegation precludes us from considering the merits of his claim. See *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983).

## VI

Finally, the defendant claims that the trial court improperly denied his motion for costs. We disagree.

The defendant's motion for costs is predicated on his interpretation of the dissolution court's corrected judgment. The defendant misinterprets the corrected judgment, which provides for an award of costs if any party initiates a proceeding without the dissolution court's permission *in a jurisdiction other than Connecticut.* Because the proceedings in this case were instituted in Connecticut, the trial court properly denied the defendant's motion for costs.

The trial court's finding of contempt, the order for the payment of counsel fees arising out of the finding of contempt, the finding that an arrearage existed and the order to pay the arrearage are reversed and the case is remanded for a new contempt hearing in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.