[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION #113: MOTION FOR MODIFICATION OF CUSTODY AND SUPPORT. MOTION #115: MOTION FOR CONTEMPT — REPAIRS MOTION #116: MOTIONFOR CONTEMPT — CHILD SUPPORT
The parties were divorced on July 7, 1989, Moraghan, J., wherein portions of an agreement were incorporated into the decree (Art. 5, 6, 7, 8, 9, 10, 11, and 13) while others survived but were not incorporated.
 I
The salient portions of the agreement involving the motions before this court were incorporated in the decree. The parties have agreed that their older son, Michael, went to live with his CT Page 6322 father in November of 1990, after having disciplinary and sibling problems at home with defendant mother.
The court accepted the agreement of the parties which provided for joint custody of the minor children, with Michael primarily residing with plaintiff father and Jonathan residing primarily with defendant mother. It appears from all of the evidence heard and inferred, that the parties' lack of communication, and rancor, have had negative effects on these children. Like so many "uncontested" divorces, the primacy of the adults' financial issues, and their insistence at power plays as depicted in these motions, has returned itself to them in the form of adolescent dysfunction necessitating family counseling. Rather than seeking the intervention of the courts, the parties have attempted to deal with their financial and custodial issues independently of this court. As is often the case, the position of the parties is entrenched and extreme as they come before the court post-judgment. They have used self-help at their risk, and are responsible for their adult action. The plaintiff's assertion that he "consulted" an attorney about bringing a motion for modification is of no relevance. It was not done. The parties clearly engaged in family therapy because of a temporary adjustment in residential custody which now is made as permanent as a custody order ever is by virtue of the court order. Whatever motivated the parties to stay away from the court process cannot be inferred. The law accepts this form of self-help in rather limited ways. What had been seen as a temporary move by the parties can be made permanent, effective on August 3, 1992, the date of the filing of the motion for modification. The court can ratify the defacto change in residential custody of Michael.
The agreement with respect to child support provides for the result which is the current reality for the parties. The agreement provides that if the defendant lives in the home with the youngest child, the plaintiff would pay the mortgage, taxes, and homeowner's insurance until the youngest child reached the age of eighteen. While the agreement is silent as to split custody, the agreement considered the needs of both children. The youngest child remains in the home whether or not the oldest child has reached the age of eighteen. If that child had the right provided to him by his parents' agreement to reside in the marital home with mom until that time, the agreement of the parties remains. The agreement is quite specific concerning the goals of the parents and the marital home. Those goals have not been subverted because of the split custody arrangement not CT Page 6323 contemplated in the agreement.
 II
The law does not provide for the retroactive modification of child support, despite the out-of-court actions of the parties.Emerick v. Emerick, 28 Conn. App. 794, 805, ___ A.2d ___ (1992); see also General Statutes § 46b-86 (a). The modification requested by the plaintiff with respect to child support cannot be allowed before August 3, 1992, the date of filing of the motion. The court finds the issues of contempt proved by the defendant, and orders the plaintiff to pay to the defendant the arrearage amount of $5,410.85. The plaintiff shall place those funds into an interest bearing account for the benefit of the educational needs of the children post high school.
Evidence disclosed that father had made statements to the child with respect to his ability to contribute to the educational needs of the children and allow the child to maintain his automobile if he was required by the court to continue paying child support. Unfortunately, the court cannot protect children of divorcing or divorced parents from being subjected to this type of communication. This is especially difficult since the plaintiff testified that he had been capable of earning extra funds at $20.00 per hour doing carpentry during summer vacations and had decided, "Why should I bother", since it would increase his income and subject him to paying more child support. This child has been put in a secondary position to the emotional and financial needs of the parties. The proposition that he wanted to come to court was gross manipulation by plaintiff. The plaintiff has a college education and advanced degrees a teacher. One would think he would have the same aspirations for his children.
 III
The defendant has brought a Motion for Contempt with respect to repairs. The court finds that the defendant failed to secure the necessary consent of the plaintiff with respect to the repairs done on the deck at the marital home. The discussions and letters introduced concerning the repairs make it clear that there was no agreement with respect to the need for repair and the scope of that repair. The parties could have come to court to resolve the reasonableness of the plaintiff's claims. However, their agreement as incorporated into the judgment calls for his agreement. The fact that defendant proceeded on her own CT Page 6324 mandates that she pay the cost of those unilateral repairs, the plaintiff cannot unreasonably withhold consent, and must respond in the future in a timely and reasonable manner.
The decree states as follows: "Defendant is ordered responsible for the general maintenance . . . No such major repair shall be undertaken without the prior mutual consent of the plaintiff and defendant."
The present motion involves repairs to the deck of the marital home. The communication between the parties is poor, but it appears that the plaintiff did not consent to the repair of the deck.
The parties initially disagreed as to the need for a replacement of the entire deck, as opposed to the replacement of only a portion of the deck. The estimate of the plaintiff exceeded the estimate provided by French Bros., the contractor ultimately selected by the defendant. There appears to have been a submission of an estimate in late 1990 by "French" (Pl. Exh. 1), which was responded to by letters of March 11 and 24, 1993 (Pl. Exhs. 2 and 3). The delay appears to be unreasonable and unnecessary. However, the defendant had both of those responses prior to actually hiring "French" to go ahead with the work. The defendant's decision to go ahead and replace the deck was her own and she may not seek contribution from plaintiff on the repairs to the deck.
The defendant's testimony with respect to the rotted window moldings was credible in light of the way plaintiff chose to respond with respect to the deck. This court finds that by his lack of response he assented to the repairs and shall pay 40% of $245.92. From this time forward, he shall respond within fifteen (15) days to a certified mail, return-receipt requested, indication of necessary "major repairs" to defendant. failure to so respond will be his consent. Reimbursement ordered hereunder shall be made in full within 30 days. Yontef v. Yontef,185 Conn. 275.
 IV
The defendant has made a claim for attorneys fees on her Motions for Contempt predicated on Article XIX (E) of the Separation Agreement. She has prevailed on one of her two claims, and prevailed on a portion of the second. The court CT Page 6325 awards attorney's fees in the amount of One Thousand ($1,000.00) Dollars.
DRANGINIS, J.