[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION REGARDING MOTION FOR POST-JUDGMENT MODIFICATION OF ALIMONY, AND MOTION FOR CONTEMPT
Defendant Mario Proiette, Jr. has filed a post-judgment motion for modification alimony by which he seeks an order from this court reducing, suspending or terminating his obligation to pay alimony in the amount of $225.00 per week — an obligation established in the judgment of dissolution of October 7, 1991. He predicates his request upon alleged changes in circumstances. Plaintiff Nima Proiette has filed a motion for contempt through which she seeks an order from this court finding defendant Mario Proiette in contempt of its order that he pay the alimony so ordered. In her motion the plaintiff claims that the defendant has made alimony payments only through the first day of March 1999. The court shall first address the defendant's motion to modify or terminate alimony.
When the judgment was entered on October 8, 1991, the Court ordered defendant Mario Proiette to pay alimony in the amount of $225.00 per week. The court also assigned various assets to the parties. After factoring in the court assignments, the parties' allocation of assets and liabilities, and their weekly income and expenses, adjusted from figures on their financial affidavits, were as follows:
 Party
Nima Proiette Assets
 Description Net Value
 Real Property: Montowese Ave. $ 113,000 CT Page 6291 1990 Cougar automobile 7,340 New Haven Savings Bank account 2,800 New Haven Savings Bank (CD) 20,000 Aetna IRA 2,500 Connecticut Savings Bank joint account 5,000 Lexington Fund 21,645
172,285
Liabilities
 Various assets assigned to plaintiff Nima Proiette range from $ 9,440 to $ 11,830, without including the balance of the mortgage on the Montowese Avenue property.
Weekly Income
 Nima Proiette's net employment income was $ 214 Her income from interest on a CD was 23.
237
Weekly Expenses
The plaintiff's weekly expenses were $ 491.
Party
Mario Proiette Assets
Description Net Value
 Real property at 52 South End Street $ 50,000 M M Sales 50,000 Aetna IRA 25,000 Bank of Boston joint account 9,500 Lexington Fund 10,855 Chevrolet automobile 3,000 Lincoln automobile 3,000 Cadillac 15,000
166,355
Liabilities
 Excluding the mortgage on the real property at 52 South End Street, the liabilities of defendant Mario Proiette consisted of unpaid attorney's fees in the CT Page 6292 amount of $5,277.00.
Weekly Income
 Defendant Mario Proiette's weekly income consisted of net employment income of $550.63, and income from M M Sales in the amount of $200.00, for a total of $750.63.
Weekly Expenses
Defendant Mario Proiette had weekly expenses of $991.77.
The authority for modification of an order of periodic alimony is set out in Connecticut General Statutes Section 46b-86 (a) which states in part that unless otherwise prohibited by an order issued in a case, ". . . any . . . order for alimony . . . may . . . be continued, set aside, altered or modified . . . upon a showing of a substantial change in the circumstances of either party." It is clear that "[t]he burden is on the party seeking modification to show the existence of a substantial change in circumstances." Emerick v. Emerick, 28 Conn. App. 794,802 (1992).
Thus, this court must examine the record to see whether defendant Mario Proiette the party seeking modification, has produced sufficient evidence upon which the court may find a substantial change in the circumstances of either party.
The court shall now compare the parties' assets, liabilities, income and expenses in 1991 with the ones at the time of the hearing on the pending motions. For purposes of this financial analysis defendant Mario Proiette's alimony obligation is not reflected in the plaintiff's income.
 Nina Proiette 1991 Assets $ 172,285 Liabilities 11,830 Income 237 Expenses 491 2000 143,021 887 224 350 Difference — 29,264 (10,943) — 13 — 141
 Mario Proiette 1991 Assets $ 166,355 Liabilities 5,277 Income 750 Expenses 992 2000 195,910[2] -0- 660[3] 783[4]
Difference + 29,555 (5,277) — 90 — 269
It should be noted that the difference in the plaintiff's actual dollar figures as to income is quite modest. CT Page 6293
An analysis of the income and expense figures shows that in 1991 the plaintiff's income from employment met 48 percent of her expense, and that it now meets 64 percent of her expenses. An analysis shows further that the defendant's income in 1991 met 76 percent of his expenses and that presently his income accounts for 84 percent of his expenses. The analysis also shows that the defendant has substantially more assets than the plaintiff.
However, it must be noted that there are several significant lapses in proof as to a complete view of the defendant's income and assets. First, although the defendant testified that he has lost substantial income from his business since the judgment, he did not provide an inventory page to the profit-loss statement for the 1998 tax return, and he failed to produce a profit-loss statement, a w-2 or 1099 tax form for calendar year 1999 — in spite of the fact that the plaintiff issued a subpoena for the presentation of such documents at the hearing. The failure to produce the subpoenaed documents or to satisfactorily explain the absence of the same detracts from rather than facilitates the defendant's efforts to prove his entitlement to a favorable ruling on his motion for modification. Certainly, as a self-employed person, the defendant determines the amount which he will take as an income draw.
Secondly, as the plaintiff points out, although the defendant testified to an offer of $20,000 for purchase of his business, he failed to place a dollar value on the business on the financial affidavit. Further, the court can not ignore that the defendant list the value of the Putnam Fund as 60,000, on his financial affidavit, whereas the exhibit for the Putnam Fund shows a value of $73,107.68 as of December 31, 1999, and no satisfactory evidence explaining the adverse inference was presented. The court finds that financial inconsistencies of this type are not proper supports for a motion for modification.
On the basis of the financial affidavits and the other evidence submitted relative to the defendant's motion for modification, the court finds that the defendant has not met his burden of submitting evidence sufficient to support a finding of a substantial change in circumstances.
As to the plaintiff's Motion for Contempt, the defendant has admitted that he has not paying alimony for a period of time. The court finds that the amount of unpaid alimony from October of 1999 through February 23, 2000 is $9,450. The court finds that he had the financial ability to pay the alimony as ordered. CT Page 6294
Upon the foregoing reasons, the court enters the following Orders:
1] That the defendant's Motion for Modification of Alimony is denied.
2] That the plaintiff's Motion for Contempt is granted.
IT IS FURTHER ORDERED:
1] that the defendant shall resume his current alimony payments immediately;
2] that the defendant shall pay the alimony arrearage of $9,450 on or before June 8, 2000;
3] that the defendant shall pay the arrearage which accumulated after February 23, 2000 at the rate of $50.00 per week, commencing on June 8, 2000; and,
4] that the defendant shall pay $1,500 toward plaintiff's counsel fees for prosecution of the motion for contempt. Said counsel fees shall be paid at the rate of at least $50.00 per week starting June 8, 2000.
Clarance J. Jones, Judge