[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: ORDER TO SHOW CAUSE (DOCKET ENTRY NO. 114) AND MOTION FOR CONTEMPT POST JUDGMENT (DOCKET ENTRY NO. 115)
The plaintiff wife claims the defendant husband should be held in contempt for his failure to comply with Article 10.1 of the written Agreement of August 2, 1994, which Agreement was incorporated in the judgment of dissolution entered on the same day. That article reads:
 The Husband shall pay directly to the child as an allowance One Hundred Fifty ($150.00) Dollars a week while he attends college on a full time basis not to exceed four years. This money shall be used for his education and related expenses.
The "child" (Eric) attended college in New York from September of 1995 to December of 1999 (four and one-half years) when he graduated and is presently twenty-four (24) years old.[1] The parties agree the defendant is not responsible for payment of that allowance during the student's last semester. They are also agreed the evidence established the total of the monies paid by the defendant — and to be considered as payments toward the student's allowance — is $15,920.55.
Both the husband and wife testified the practice was for the wife to ask the husband to make certain payments on Eric's behalf and both testified the husband responded to each one of those requests by paying the amounts requested. In fact, the husband testified to the wife's having told him — in the recent past — that each of them (she and the defendant) had "done all that they were supposed to do for Eric" — a statement not refuted by the plaintiff.
The parties disagree upon the extent of the defendant's obligation under the language of the contract. Specifically, the wife claims the former husband's obligation to pay $150.00 per week while Eric "attends college on a full time basis" obligated him to pay fifty-two (52) weeks per year for a total of two hundred eight (208) weeks — and thus to pay thirty-one thousand two hundred dollars ($31,200) as an allowance over the four year period. The defendant claims his obligation was to pay only CT Page 7376 while Eric was in fact "attending college." Backing out vacation periods, semester breaks, and summer vacations, he claims his obligation over four (4) years was for a total of one hundred sixty (160) weeks — or $24,000. The plaintiff agreed to rest her claim the defendant has failed to comply with the referenced provision of the agreement in that eight thousand seventy-nine dollars and forty-five cents ($8,079.45) remains unpaid ($24,000 less $15,920.55 = $8,079.45). Yet, there was additional testimony the defendant assumed other costs incurred by the son.
The defendant paid one-third (1/3) of the cost of the purchase of a car for the son, which car the plaintiff wife testified was necessary transportation for the son's school obligations. Additionally, he paid a portion of such expenses as the rental of an apartment for the son while the son was attending college. Neither party had available at the time of the hearing on May 31, 2001, evidence of that amount in excess of $15,920.55 paid by the defendant though it is clear a greater amount was paid.[2] Thus, the total sum paid by the defendant over four (4) years could not be established.
The finding of civil contempt may not be made in the absence of evidence establishing a wilful violation of a court order sufficiently clear in its wording to be understood by the parties. In this instance, it is unclear from the language of the contract (made an order of the court and incorporated in the judgment) whether "while he attends college" was intended to mean the entirety of the four (4) years of college — and thus all months and days over that period — or was intended to apply only to those periods when the school was in session and the student was actively participating in his education. The order lacks the clarity that permits a finding this defendant knew and understood the extent of his obligation. This conclusion is buttressed by his and the plaintiff's own testimony they believed the defendant had done "all he was supposed to do" regarding the son's educational expenses. Further, in the absence of evidence with regard to the total monies paid by the defendant on behalf of the son, the plaintiff failed in her burden of proof regarding her claim the defendant paid less than the order obligated him to pay. The defendant claimed he paid more than the checks shown by plaintiff's Exhibit B. He had no additional documentation to offer. The plaintiff did not, however, dispute his claim of additional payments made on behalf of Eric.
It is undisputed the son attended Ithaca College from September of 1995 to December of 1999. It is also undisputed that, at no time while he attended college, did he — or his mother, this plaintiff — take any action to assert the claim here made. The defendant testified he believed he was in complete compliance with the terms of the Separation CT Page 7377 Agreement because, by agreement with the plaintiff, he paid a portion of Eric's tuition together with other costs such as the purchase of a car and car insurance, phone bills, apartment rental costs, etc. It was unrefuted that, when the plaintiff asked the defendant for money on Eric's behalf, the defendant sent the requested amount. It was not until March of 2001 (six years seven months post-agreement and one year nine months after the son's anticipated graduation from college) that this motion for contempt was filed.
The defendant asserts the defenses of laches and equitable estoppel. "Laches consists of two elements. First, there must have been an inexcusable delay, and, second, that delay must have prejudiced the defendant." Emerick v. Emerick, 28 Conn. App. 794, 803-04 (1982); see also Brock v. Cavanaugh, 1 Conn. App. 138, 140 (1984) (citations omitted) "The mere lapse of time does not constitute laches (citations omitted) unless it results in prejudice to the defendant." Emerick, at 804.
The plaintiff offered no reason for the delay in asserting this claim[3] nor did the defendant make specific claim the delay was inexcusable. Further, the defendant's only claim of prejudice was that he had not saved any money, thus implying he could not afford to pay additional sums. He failed in his burden to show prejudice since, in the absence of a financial affidavit or other documentary evidence of his financial posture, the court cannot conclude the defendant relied to his prejudice on the payment practice he and the plaintiff had established or that he had relied to his prejudice on the wife's representation to him that he had done all that he "was supposed to do" for Eric.
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights that might otherwise have existed against another' person who has in good faith relied upon the first party's conduct and who has been led thereby to change his position for the worse." Lownds v.Lownds, 41 Conn. App. 100, 106 (Hartford — New Britain at Hartford, Super. Ct. (1988) citing to Bozzi v. Bozzi, 179 Conn. 232, 241
(1979)). The two essential elements to an estoppel are: (1) one party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and (2) the other party, influenced thereby, must actually change his position or do some act to his injury that he otherwise would not have done. Lownds, at 106.
The evidence presented at the hearing on May 31, 2001, established no inducements made by the plaintiff — nor does the defendant claim the same. Emerick, supra, makes clear the defendant's need to have CT Page 7378 changed his position or to have done some act to his injury — an "act he otherwise would not have done." 28 Conn. App. 794, at 803. See also Bozziv. Bozzi, 177 Conn. 232, 241 (1979)
There having been offered no evidence of the defendant's prior pattern of saving and no evidence of his present inability to pay additional monies at this time, he failed in his burden of establishing a change of posture in reliance on the payment practice or the plaintiff's representation. Equitable estoppel is not established as a defense.
The court, however, having found the Agreement to be ambiguous, concludes the defendant did not wilfully violate its terms but instead performed under the belief he was complying with the same. The Motion for Contempt is denied.
B. J. SHEED, JUDGE