2003 ND 96

**Jenese A. PETERS–RIEMERS, Plaintiff and Appellee,**

v.

**Roland C. RIEMERS, Defendant and Appellant.**

No. 20020225.

Supreme Court of North Dakota.

June 17, 2003.

Michael L. Gjesdahl, Gjesdahl & Associates, Fargo, for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, DeMores Office Park, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Roland C. Riemers appealed from an order holding him in contempt, and a resulting warrant of attachment and money judgment, for failing to comply with the property distribution provisions of a divorce decree. Because the record does not show that Riemers was informed of his right to counsel when his incarceration became a likely result of the contempt proceedings, we reverse and remand for further proceedings.

I

[¶ 2] Jenese A. Peters–Riemers and Roland C. Riemers were divorced in May 2001 following a troubled two-year marriage. *See Peters–Riemers v. Riemers*, 2001 ND 62, 624 N.W.2d 83; *Flattum–Riemers v. Peters–Riemers*, 2001 ND 121, 630 N.W.2d 71. The amended divorce judgment ordered Roland to pay $1,150 per month child support for the couple's child and $500 per month spousal support to Jenese for five years. As part of the marital property distribution, Roland was awarded all financial accounts in his name and two parcels of real estate. The divorce judgment awarded Jenese all financial accounts in her name and further provided:

12. *JENESE'S REAL ESTATE:* Effective June 16, 2001, Jenese shall have sole ownership in fee simple absolute, including all right, title, possession and interest therein, free and clear of any claim of right, title or interest by Roland, in and to the following parcels of real estate:

*Marital Residence, RR # 1, Box 43, Buxton, North Dakota:* Legally described as "591 by 690 feet tract in the

E ½ SE ¼ Section 13 Township 147 Range 51. 9.36 acre Tract."

*217 Chestnut, Grand Forks, North Dakota:* Legally described as "Lot 10, 12 Block 9 Traill's Addition to the City of Grand Forks."

*309 5th Street N., Grand Forks, North Dakota:* Legally described as "Lot 7, Block 12 Original Townsite Grand Forks."

Prior to June 1, 2001, Roland shall be solely and separately liable upon any and all debt, loan, utility and any other payment or liability relative to the above-referenced parcels of real estate.

In the event that, by no later than June 15, 2001, Roland fully complies with the terms of paragraph # 15 below, however, then Roland shall have sole ownership in fee simple absolute, including all right, title, possession and interest therein, free and clear of any claim of right, title or interest by Jenese, in and to the above-referenced parcels of real estate.

Paragraph 15 of the divorce judgment allowed Roland to pay Jenese a lump sum of $180,000 by June 15, 2001, and maintain sole ownership of the three parcels awarded to Jenese.

[¶ 3] Roland appealed the divorce judgment to this Court and the trial court granted a stay of execution of paragraph 12 of the divorce judgment effective through July 15, 2001 to allow Roland to procure a $175,000 supersedeas bond. Roland failed to obtain a satisfactory supersedeas bond and did not make the $180,000 lump sum payment to Jenese.

[¶ 4] After the stay expired and Roland failed to vacate the marital residence, Jenese brought eviction proceedings against him. This Court affirmed the order evicting Roland from the residence. *See Peters–Riemers v. Riemers*, 2002 ND 49, 641

N.W.2d 83. On November 26, 2001, while the appeal from the divorce judgment was pending in the Supreme Court, Jenese filed in this Court a contempt motion against Roland for violating the property distribution provisions of the divorce judgment, requesting:

1. An order requiring Roland to immediately vacate Jenese's Buxton property;

2. An order requiring Roland to turn over all keys to the properties awarded to Jenese in the Amended Judgment in their divorce action;

3. An order requiring Roland to turn over all security deposit[s] for all tenants of the building located 217 Chestnut and all the tenants of the building at 309 5th St. N.;

4. An order requiring Roland to pay the back taxes on the Grand Forks properties;

5. An order requiring Roland, and Roland's agents, to cease and desist any interference with Jenese's operation of her apartment buildings;

6. An order restraining Roland, and Roland's agents, from trespassing on the premises at 217 Chestnut and 309 5th St. N.

7. Such further relief as the Court deems necessary and just.

On November 28, 2001, we "temporarily REMANDED for the limited purpose of the trial court's consideration of the Contempt Motion, but the Supreme Court retains jurisdiction for purposes of the appeal."

[¶ 5] The trial court held a hearing on the contempt motion on December 18, 2001. Roland appeared pro se, as he has in several of these proceedings. Shortly after the hearing began, Jenese's attorney explained that he wanted a contempt "order that imposes a six month jail period,"

stayed until January 1, 2002, to give Roland time to comply with the relief sought. Jenese presented evidence that Roland, in addition to failing to comply with the property distribution provisions of the divorce decree, was also behind in his child and spousal support payments. The trial court issued a contempt order on December 20, 2001, finding Roland in contempt for:

( [1] ) his failure to relinquish possession of the Buxton farmstead; (2) his various efforts to obstruct and obscure Jenese's full complement of ownership rights and interests in and to the rental properties; (3) his collection of rental payments owed to Jenese after July 15, 2001; (4) his failure to account for and transfer to Jenese all security deposits for the current tenants in the rental properties; (5) and his failure to pay all liabilities due and owing on the rental properties, including but not limited to the 2000 property taxes.

The trial court ordered that "Roland is hereby sentenced and committed to a period of six (6) months incarceration in the Traill County jail," but stayed the sentence until another hearing could be held on January 22, 2002, to determine whether Roland had purged the contempt. At that time, the trial court also issued an order to show cause why Roland should not be held in contempt for failure to pay his child support and spousal support obligations imposed by the divorce decree.

[¶ 6] The second hearing was continued until February 19, 2002. Roland again appeared pro se. Both parties presented evidence. Roland testified that he had satisfied some of the conditions imposed by the December 20, 2001 order, but was currently "flat broke" and was expecting to file for bankruptcy.

[¶ 7] After the second hearing was held, this Court affirmed the divorce judgment in its entirety. *See Peters–Riemers*

*v. Riemers,* 2002 ND 72, ¶ 31, 644 N.W.2d 197. On May 29, 2002, a hearing was held before a second trial court judge on the contempt motion against Roland for failure to pay spousal and child support. On June 6, 2002, the second trial court judge found Roland was not in contempt of court "because the financial information showed [Roland] did not have the income available to pay this monthly obligation." The court ordered that Roland's child and spousal support obligations would continue to accrue at the rate of $1,150 and $500 per month, respectively, but ordered the "enforcement of the monthly child support obligations shall continue in the sum of $500.00 each month, commencing June 1, 2002."

[¶ 8] On June 27, 2002, the trial court judge who had presided over the December 18, 2001 and February 19, 2002 hearings issued a contempt order. The trial court took judicial notice of the order of the second trial court judge finding Roland not to be in contempt for the unpaid child and spousal support and incorporated it in the opinion. The trial court found that Roland had purged himself of some of the mandated conditions, but continued to be in contempt regarding other conditions. The court ordered:

4. *Amount Owed:* Roland shall pay to Jenese the sum of $40,144.84, payable by certified or cashier's check and delivered to either Jenese Peters or her attorney of record, Michael L. Gjesdahl.

5. *Money Judgment:* The Clerk of Court shall enter a docketable money Judgment against Roland Riemers and in favor of Jenese Peters, in the amount of $40,144.84, comprised of the amounts set forth in paragraphs 2 and 3 above.

6. *Incarceration:* Roland shall be immediately incarcerated in the Traill County Jail for a period of six months or until he has paid Jenese the sum of $40,144.84, whichever occurs first.

7. *Writ Warrant of Attachment:* The Traill County Clerk of District Court shall immediately issue a Writ or Warrant of Attachment, requiring the Traill County Sheriff's [Department], the Grand Forks County Sheriff's Department, the Grand Forks Police Department, the Hillsboro Police Department and any other North Dakota law enforcement officer to detain Roland Riemers and deliver him into the custody of the Traill County Sheriff for incarceration in the Traill County jail.

[¶ 9] On July 8, 2002, Roland was incarcerated in the Traill County Jail. Roland obtained counsel and filed a writ of habeas corpus, which was granted by the second trial court judge who had found Roland to not be in contempt for failing to pay child and spousal support. Relying on N.D.C.C. §§ 27–10–01.1(1)(b) and 27–10–01.4(1)(b), the trial court reasoned Roland could not be incarcerated for failure to comply with the property distribution provisions of the divorce decree because execution could be awarded for the collection of the amount due. Jenese did not appeal from this order. Roland was released from jail and, through counsel, took this appeal from the June 27, 2002 contempt order. After the notice of appeal was filed, the second trial court judge vacated his June 6, 2002 order finding Roland to not be in contempt for failing to pay child and spousal support because "[n]either the undersigned nor, apparently, the Traill County State's Attorney were aware that this matter was" the subject of a pending action.

[¶ 10] In January 2003, a hearing was held on Jenese's motion to hold Roland in contempt for his failure to pay child support and spousal support. Roland appeared pro se. On February 3, 2003, a

third trial court judge found Roland in contempt and authorized entry of a money judgment "requiring Roland to pay to Jenese the sum of $24,590.34, comprised of $23,465.84 in child and spousal support arrearages and $1,124.50 in attorney fees." The trial court further ordered:

6. *Sentence:* By no later than the end of business, March 28, 2003, Roland shall pay the sum of $23,465.84 to the *State Disbursement Unit, PO Box 7280, Bismarck, ND 58507–7280.* Should he fail to make such payment, upon Jenese's request and the Court's verification with the State Disbursement Unit's computer system that the payment has not been made, a Writ of Attachment shall issue for Roland's arrest and confinement. Roland shall then serve thirty (30) days in the Traill County jail. Roland may obtain his unconditional release from such confinement at any time upon his full payment of the $23,465.84.

[¶ 11] On March 26, 2003, Roland filed yet another appeal which is presently pending in this Court. Among the issues raised by Roland in the latest notice of appeal is the trial court's "failure to advise Roland the court was considering incarceration and to Roland's right to an attorney when the proceedings could result in up to 6 months in jail, and did result in an order for one month in jail ..." On April 11, 2003, this Court denied Roland's emergency request for stay pending appeal of this contempt order. On May 9, 2003, the third trial court judge granted a stay of Roland's 30–day jail sentence pending further order of the court.

II

[¶ 12] Roland raises a number of issues on appeal, but the dispositive issue he raises in this case involves the trial court's obligation to inform a pro se defendant of the right to counsel in a contempt proceeding in which the defendant faces potential incarceration. Because Roland has been granted a writ of habeas corpus discharging him from incarceration by the second trial court judge and Jenese did not appeal, it is arguable we cannot render effective relief regarding this issue and the appeal is moot.

[¶ 13] Mootness is a threshold issue we decide before reaching the merits of an appeal. *Simpson v. Chicago Pneumatic Tool Co.,* 2003 ND 31, ¶ 7, 657 N.W.2d 261. An appeal is moot when an appellate court is unable to render effective relief because of the lapse of time or because of the occurrence of an event prior to the appellate court's determination. *Ashley Educ. Ass'n v. Ashley Pub. Sch. Dist.,* 556 N.W.2d 666, 668 (N.D.1996). Mootness may arise from an event which occurred after the district court's decision, but before oral argument. *Fercho v. Remmick,* 2003 ND 85, ¶ 8, 662 N.W.2d 259.

[¶ 14] Nevertheless, we "will determine an issue that is moot, rather than dismiss the appeal, 'if the controversy is one of great public interest and involves the authority and power of public officials or if the matter is capable of repetition, yet evading review.'" *Fercho,* 2003 ND 85, ¶ 9, 662 N.W.2d 259 (quoting *Sposato v. Sposato,* 1997 ND 207, ¶ 9, 570 N.W.2d 212). We believe the dispositive issue in this case is one of great public interest involving the authority of public officials because it concerns a pro se defendant's constitutional rights when faced with possible incarceration by a court of law. Moreover, the issue is capable of repetition, yet evading review, because Roland could face incarceration again without benefit of counsel, unless we address the merits. Indeed, this possibility is evidenced by the record in this case. Although Roland has been released from incarceration for violation of the property distribution

provisions of the divorce decree, Roland again faces possible incarceration for violating the child and spousal support provisions of the divorce decree, and Roland has again raised the issue of the trial court's obligation to inform him of the right to counsel in his appeal from that contempt order. Consequently, we will address the merits. *See In re Marriage of Stariha*, 509 N.E.2d 1117, 1123 (Ind.App. 1987) (holding case fell within public interest exception to mootness doctrine even though defendant had served sentence imposed in contempt hearing).

### III

██ [¶ 15] Roland argues the contempt proceedings were invalid because Jenese failed to bring her contempt motion in the proper court. According to Roland, the contempt motion should have been filed in the trial court, rather than in this Court, because this Court lacked subject matter jurisdiction over the matter. Roland argues this Court only had appellate jurisdiction and should have dismissed the motion, rather than remand it to the trial court.

██ [¶ 16] With some exceptions, a trial court loses its jurisdiction when a notice of appeal is filed. *Wilson v. Koppy*, 2002 ND 179, ¶ 6, 653 N.W.2d 68. It is well settled, however, that "an appeal does not operate to stay proceedings for the enforcement of a judgment; that a judgment may be enforced unless a supersedeas bond is given at or after the time of filing the notice of appeal." *Verry v. Murphy*, 163 N.W.2d 721, 725 (N.D.1968). When a court has issued an allegedly erroneous order, the party to whom the order was issued must obey it as long as it remains in force or until it is reversed on appeal, and the failure to obey the order is punishable as a contempt of court. *Fargo Women's Health Org., Inc. v. Larson*, 391

N.W.2d 627, 634 n. 8 (N.D.1986). Consequently, the trial court had jurisdiction to entertain Jenese's contempt motion while the underlying divorce judgment was pending on appeal to this Court. *See Dahlen v. Dahlen*, 393 N.W.2d 769, 770 (N.D. 1986).

[¶ 17] Furthermore, N.D.C.C. § 27–02–05.1(5) allows this Court to "provide to the extent it deems necessary or desirable, rules for ... [t]he transfer of any matter to any proper court when the jurisdiction of any court has been improvidently invoked." Under N.D.R.App.P. 35(b), if "it becomes apparent to the supreme court that some issue involved in the case has not been tried ... and that it is necessary or desirable to proper disposition of the case on appeal that the issue be determined, the supreme court may remand the case to the trial court for the determination of the issue, without relinquishing jurisdiction of the appeal." Therefore, this Court had jurisdiction to remand Jenese's contempt motion to the trial court for disposition. *Cf. Harger v. Harger*, 2002 ND 76, ¶ 16, 644 N.W.2d 182 (recognizing this Court has concurrent jurisdiction with the trial court to award attorney fees on appeal and remanding to the trial court to award reasonable attorney fees).

[¶ 18] Roland's argument that the contempt proceedings were fatally defective because the contempt motion was originally filed in this Court is without merit.

### IV

██ [¶ 19] The dispositive issue is whether the trial court committed reversible error by failing to inform Roland of his right to counsel in the contempt proceedings resulting in his incarceration.

[¶ 20] Under the contempt provisions of N.D.C.C. ch. 27–10, a court may impose both remedial and punitive sanctions, which incorporate the traditional charac-

teristics of civil and criminal contempt, respectively. *Mid–Dakota Clinic, P.C. v. Kolsrud,* 1999 ND 244, ¶ 20, 603 N.W.2d 475. In *Endersbe v. Endersbe,* 555 N.W.2d 580, 582 (N.D.1996) (citations omitted), we explained

A remedial sanction is one which "includes a sanction that is conditioned upon performance or nonperformance of an act required by court order." N.D.C.C. § 27–10–01.1(4). Remedial sanctions can be payment of money, forfeitures, or imprisonment. N.D.C.C. § 27–10–01.4(1). A prison sentence is remedial only if it is conditional and the "contemnors carry ' "the keys of their prison in their own pockets...." ' " Punitive sanctions, however, are unconditional. Thus, a punitive sanction is "a sanction of imprisonment if the sentence is for a definite period of time ..." or a sentence which "is not conditioned upon performance or nonperformance of an act...." N.D.C.C. § 27–10–01.1(3). The most important factor which makes a sanction punitive is its unconditional nature; if the contemnor cannot purge the contempt by performance, the charge is punitive.

When imposing contempt under N.D.C.C. ch. 27–10, a court must first consider whether a remedial or punitive sanction is applicable and then apply the appropriate procedures for imposing the sanction. *Kolsrud,* at ¶ 20. Because Roland's release from incarceration was conditioned upon the performance of various acts which the trial court apparently found he had the current ability to perform, it appears the sanction imposed was remedial.

[¶ 21] In *State ex rel. Gullickson v. Gruchalla,* 467 N.W.2d 451, 453 (N.D.1991) (footnote omitted), this Court declared "indigent defendants in civil contempt proceedings should be granted counsel at state expense when, if they lose, they will likely be deprived of their physical liberty." *Gruchalla* comports with the unanimous view of the United States Courts of Appeal, as well as the view of the overwhelming majority of state courts to consider the question, that due process requires one who may be deprived of liberty through a contempt proceeding to be afforded a reasonable opportunity to obtain counsel to represent him. *See* Annot., *Right to Appointment of Counsel in Contempt Proceedings,* 32 A.L.R. 5th 31 (1995), and cases collected therein.

[¶ 22] Courts have also routinely held that this due process right places an obligation on the trial court to inform a defendant of the right to counsel in a contempt proceeding in which the defendant faces potential incarceration, and to inform the defendant that in the event the defendant is found to be indigent, the defendant has a right to appointed counsel. *See, e.g., Walker v. McLain,* 768 F.2d 1181, 1185 (10th Cir.1985); *Ridgway v. Baker,* 720 F.2d 1409, 1412 (5th Cir.1983); *McKinstry v. Genesee County Circuit Judges,* 669 F.Supp. 801, 803 (E.D.Mich.1987); *Emerick v. Emerick,* 28 Conn.App. 794, 613 A.2d 1351, 1353 (1992); *Stariha,* 509 N.E.2d at 1121; *Johnson v. Johnson,* 11 Kan.App.2d 317, 721 P.2d 290, 294 (1986); *Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228, 237 (1983); *Mead v. Batchlor,* 435 Mich. 480, 460 N.W.2d 493, 505 (1990); *Gaudette v. Gaudette,* 263 A.D.2d 620, 692 N.Y.S.2d 809, 811 (1999); *McBride v. McBride,* 334 N.C. 124, 431 S.E.2d 14, 19 (1993): *State v. Pultz,* 206 Wis.2d 112, 556 N.W.2d 708, 717 (1996). The obligation to inform ensures that any waiver of the right to counsel is intelligent and competent. *See Walker,* 768 F.2d at 1185; *Emerick,* 613 A.2d at 1353. The requirement applies whether the contempt motion is brought by the state or by a private party, because the potential deprivation of physical liberty is the same in either case. *See Dube v.*

*Lopes,* 40 Conn.Supp. 111, 481 A.2d 1293, 1294 (1984); *Stariha,* 509 N.E.2d at 1122. Likewise, the argument that incarceration is conditional and the defendant holds the keys to the jailhouse door does not apply to diminish the defendant's liberty interest. *See Walker,* 768 F.2d at 1184; *Ridgway,* 720 F.2d at 1413–14. A defendant found in contempt and incarcerated does not hold the keys to the jailhouse door if the defendant cannot pay. *See Mead,* 460 N.W.2d at 501; *McBride,* 431 S.E.2d at 18. Although a defendant should not be jailed if truly indigent, this fact only highlights the need for assistance of counsel in establishing indigency to ensure the defendant is not improperly incarcerated. *See Walker,* 768 F.2d at 1184; *Pultz,* 556 N.W.2d at 714.

[¶ 23] These cases reflect the right to counsel when a defendant faces potential incarceration in a contempt proceeding is premised on the federal constitution. Our contempt statutes were heavily influenced by Wisconsin's contempt system. *See* Note, *North Dakota's New Contempt Law: Will It Mean Order in the Court?,* 70 N.D. L.Rev. 1040–41 (1994). We adopt the procedural requirements outlined by the Wisconsin Supreme Court ·in *Pultz,* 556 N.W.2d at 716–17 (footnote and citation omitted) to implement this constitutional mandate:

> To assure that the defendant who faces a threat to liberty at a contempt hearing is properly advised of the right to appointed counsel if he or she is found indigent, the circuit court must take the initiative. The circuit court must engage in a colloquy that clearly conveys the existence of this right to the defendant. Further, the colloquy must be initiated by the judge to inquire whether the defendant believes him or herself indigent. It is not sufficient, as the State would have here, that silence by the defendant in the absence of specific questioning means that indigency is not present.

> Before the court proceeds on the contempt motion, it should advise the *pro se* defendant that if he or she is found to be in contempt, the court could impose sanctions which may include the defendant having to spend time in jail. The court must also instruct that the defendant is entitled to be represented by an attorney. If the defendant wants an attorney but is financially unable to pay for a lawyer, the court must advise the defendant that an attorney will be appointed at public expense. The circuit court must be satisfied that the defendant understands those rights and must make the necessary findings based upon the defendant's answers and any other evidence the court receives. If the defendant wants to obtain counsel, the court should give the defendant a reasonable time either to retain counsel or, if indigent, to receive appointed counsel before proceeding on the contempt motion.

Although *Pultz* involved a contempt motion initiated by the government, the procedural requirements are no different when the contempt motion is initiated by a private party. *See McBride,* 431 S.E.2d at 19. These procedural requirements may be avoided if the trial court makes it clear to the defendant that incarceration will not be imposed as a sanction in the contempt proceedings. *See Wilson v. State of New Hampshire,* 18 F.3d 40, 41 (1st Cir.1994); *Ridgway,* 720 F.2d at 1415; *Emerick,* 613 A.2d at 1354.

[¶ 24] When a trial court has failed to inform a pro se defendant of his constitutional right to appointed counsel in a contempt proceeding in which the defendant faces potential incarceration, we will not attempt to discern whether the error was harmless. *See Walker,* 768 F.2d at 1185;

*Emerick,* 613 A.2d at 1354; *cf. State v. Dvorak,* 2000 ND 6, ¶ 9, 604 N.W.2d 445 (stating denial of a defendant's right to counsel at trial is not subject to harmless error analysis and requires reversal of conviction); *State v. Orr,* 375 N.W.2d 171, 178–79 (N.D.1985) (holding absent evidence of a valid waiver of a defendant's right to counsel in a prior proceeding, an earlier conviction cannot be used to enhance a sentence for a subsequent offense of driving under the influence, and a silent record is insufficient to overcome the presumption that the prior uncounseled conviction was void for enhancement purposes). An indigent who appears without a lawyer cannot be charged with knowledge of the contempt laws, and a lack of record evidence of indigency beyond the mere assertion of it is itself evidence of a need for counsel. *See Ridgway,* 720 F.2d at 1412, 1415. We do not determine in this case whether Roland is indigent, but we conclude a trial court's failure to inform a pro se defendant of the right to counsel is fatal to a finding of contempt as well as to orders related to that finding. *See Emerick,* 613 A.2d at 1354; *McBride,* 431 S.E.2d at 20.

[¶ 25] The record in this case does not show that the trial court informed Roland of his right to counsel. We need not decide the precise time the trial court's obligation to inform Roland arose. At the very latest, however, the trial court was obligated to inform Roland at the early stages of the February 19, 2002 purge hearing. *See Russell v. Armitage,* 166 Vt. 392, 697 A.2d 630, 635–36 (1997) (holding defendant was not entitled to appointment of counsel at first hearing where he was found in contempt and informed failure to comply with conditions would result in incarceration, but was entitled to appointment of counsel at second hearing to determine whether he had purged himself of the contempt). Because Roland was not informed of his right to counsel during either of the contempt proceedings, we reverse the contempt order, the warrant of attachment, and the money judgment and remand to the trial court.

## V

[¶ 26] We briefly address an additional issue raised by Roland which gives us concern and is likely to arise again upon remand.

[¶ 27] The trial court found Roland liable to pay a prorated share of the 2001 real estate taxes on Jenese's property to account for his ownership of the property from January through May 2001. The divorce judgment provided, "[p]rior to June 1, 2001, Roland shall be solely and separately liable upon any and all debt, loan, utility and any other payment or liability relative to the above-referenced parcels of real estate." However, under N.D.C.C. § 57–20–01, "[a]ll real and personal property taxes and yearly installments of special assessment taxes become due on the first day of January following the year for which the taxes were levied." Consequently, the 2001 real estate taxes were not due until January 1, 2002, and were not a debt, payment or liability of Roland's before June 1, 2001. The trial court erred in holding Roland liable for a prorated share of the 2001 real estate taxes.

## VI

[¶ 28] The contempt order, warrant of attachment and money judgment are reversed and the case is remanded for further proceedings.

[¶ 29] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.