STATE OF CONNECTICUT *v.* ROBERT G. DENYA
(AC 27540)

Gruendel, Harper and Berdon, Js.

Argued January 8—officially released May 20, 2008

*David R. Kritzman,* for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* former state's attorney, and *Anne F. Mahoney,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Robert G. Denya, appeals from the trial court's judgment modifying the terms of his probation. The defendant claims that the court abused its discretion by requiring him to submit to electronic monitoring continuously for the duration of

his probation absent any showing of good cause. We agree and reverse the judgment of the trial court.

The following relevant facts and procedural history are not in dispute. In December, 1998, the defendant pleaded guilty to three counts of risk of injury to a child in violation of General Statutes § 53-21 and three counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a. The court accepted the pleas and found the defendant guilty of these crimes. In March, 1999, the court imposed a total effective sentence of ten years incarceration, suspended after three years, followed by ten years of probation with special conditions. The court ordered the defendant to participate in any sex offender treatment or counseling deemed necessary by the office of adult probation and to register as a sex offender. The court prohibited him from having any contact with any children younger than age sixteen, the victim or any member of the victim's family.

In March, 2001, the defendant was released from incarceration and began serving the probation portion of his sentence. In January, 2004, the defendant was arrested and charged with violating the terms of his probation on at least two specific occasions. The matter was tried before the court, *Mullarkey, J.*, which found that, on one occasion, the defendant was visiting an acquaintance in South Windsor at the residence she shared with a family that included two children who were younger than age sixteen. On that occasion, the defendant remained in the residence for approximately two hours with the children after they returned home from school. The court also found that, on another occasion, the defendant, who provides wallpapering services by profession, provided an estimate for and worked in a residence knowing that an eleven year old girl resided there with her family.

At the end of the adjudicative phase of the proceeding, the court found that the defendant had violated the special conditions of his probation but classified the two violations as technical in nature. There was no allegation, nor any evidence, that the defendant had engaged in any type of sexual or likewise inappropriate conduct during these separate incidents. The court, however, found that the defendant had lied about these incidents to his probation officer, Frank Jeney. The evidence was uncontroverted that Jeney instructed the defendant not to take jobs in any home where a child resided and that he was to maintain for review by Jeney an activity log, attesting to his whereabouts when away from home. When Jeney learned about the incident in South Windsor[1] and confronted the defendant, the defendant first told Jeney that he was never in the residence when the children were there and, later, stated that he had immediately departed from the residence as soon as the children returned home from school. Additionally, the evidence was uncontroverted that the defendant informed Jeney about the job in West Hartford but, in his activity log, concealed the fact that there was at least one child living at that residence.

In the dispositional phase of the violation of probation proceeding, the court described the two instances as more than incidental in nature. The court deemed the incidents to be quite troublesome because the defendant attempted to conceal them from Jeney and, with regard to both instances, they occurred in a residence where children lived rather than in a public place. The court stated that "this deceptive behavior on his part makes the court believe that the rehabilitative and beneficial aspects of probation are no longer being met."

---

[1] The evidence presented at the hearing reflects that Jeney learned about the incident in South Windsor from a private investigator who was hired by the victim's family to monitor the defendant's activities. The investigator utilized recording devices to gather evidence concerning the defendant's activities, including the incident in South Windsor.

In an oral ruling, the court stated: "I am going to reopen the original sentence [and] reimpose the original sentence of ten years, suspended after three. However, I am going to increase the probation to the maximum term of thirty-five years as well as order sex offender registration, which, in your case, can be for life . . . [a]s well as giving a DNA [sample] and other identification samples to the department of public safety. My point here is, by my calculations, even if I gave you the maximum sentence today, you would be out in 5.9 years. This probation will carry you until you are eighty-nine.

"[A] condition of that probation is you will not have any contact directly [or] indirectly with the victim, her family, including her grandmother. You will not go within one mile of their residences, places of work, places of recreation and those places [of] schooling. Those places will change probably over the next thirty-five years. . . . [Y]ou have already served two years of probation, [so your term of probation will] be about thirty-three years. And the [office of adult] probation . . . will update [the victim and her family].

"Number two, you will submit to and pay for such electronic digital global positioning or whatever other service probation deems appropriate, and if they deem you capable, you will pay for such service to enforce the restrictions on your going anywhere near this family.

"As far as your work is concerned, you are banned from working or estimating your jobs in private residences, schools, day [care] centers, parks and [recreation] or any other place where children, that means, in this instance, people under the age of eighteen, may live, engage in recreation, schooling, job training.

"You will take such sex offender counseling and treatment as deemed appropriate, continue with [William Hobson, a sex offender treatment provider] and such

additional or different treatment as determined necessary by the probation [office] after they hear from him.

"No one, including Mr. Hobson, is allowed to modify any of your probation [conditions]; only a judge is. So that if Mr. Hobson determines that you can reside in a house where children are or something else, then you have to contact your probation officer and, or, your attorney, come back to court, some judge will have a hearing and decide. . . . [Mr. Hobson] can't modify probation, only a judge can." Finally, the court set specific guidelines concerning the defendant's visits with his granddaughter.

The court subsequently issued a written order of probation that was signed by a court clerk. The order set forth the several conditions of probation imposed by the court at the conclusion of the dispositional phase of the violation of probation proceeding. As relevant, the order, dated October 1, 2004, contained the following language: "It is ordered and adjudged that . . . the defendant must submit to and pay for any electronic/digital monitoring as deemed appropriate by the office of adult probation . . . ." The defendant did not appeal from the court's judgment.

On December 15, 2005, the state filed a pleading entitled "Motion to Modify Probation," the body of which states: "Pursuant to Connecticut Practice Book [§] 43-29A, the [s]tate respectfully requests this [c]ourt [to] modify [the defendant's] probation. The [s]tate requests probation return [the defendant] to electronic monitoring." The court, *Mullarkey, J.*, subsequently held a hearing concerning the state's motion to modify. During that hearing, the prosecutor represented that, in September or October, 2005, she learned from the victim's attorney that the office of adult probation had discontinued its electronic monitoring of the defendant and that she was unsuccessful in her attempts to have such monitoring

reinstated. The prosecutor stated that the court, in its 2004 ruling, had not afforded the office of adult probation discretion to terminate electronic monitoring but merely discretion to determine what type of electronic monitoring system to utilize. Recalling, briefly and generally, the factual circumstances related to the violation of probation proceeding in 2004, the prosecutor stated that continuous monitoring of the defendant for the duration of his probation was desired by the state and the victim's family as an objective way of keeping track of the defendant's whereabouts. The state did not present any evidence in support of its motion.

The defendant's attorney argued that the court had not ordered the defendant to submit to continuous electronic monitoring for the duration of his probation but had afforded the office of adult probation discretion with regard to the use of such monitoring during the probationary term. The defendant's attorney represented that the defendant had paid for electronic monitoring until his probation officer told him that such monitoring was no longer required. The defendant's attorney presented testimony from the defendant's probation officer, Jeney. He testified that, generally, the office of adult probation monitors probationers who must submit to monitoring for six months and, if such persons are compliant, electronic monitoring is no longer used. Jeney further testified that electronic monitoring of the defendant occurred for almost eight months, during which time the defendant was compliant. Jeney testified that he and his supervisor made the decision to terminate the monitoring and that he believed that the court, in its 2004 order, had given the office of adult probation discretion to make such a decision.

At the conclusion of the hearing, the court framed the issue before it, stating that its only task was to determine what it meant by the order it had issued

following the violation of probation proceeding in 2004. On March 16, 2006, the court issued a memorandum of decision entitled, "Memorandum of Decision Rectification of Order of Probation Dated October 1, 2004." The court stated in its ruling: "A review of [the] court's notes of the October 1, 2004 hearing on the violation of probation, the sentencing transcript of that same date, the court monitor's audiotapes of that same date and the order of probation lead to the following conclusions:

"(1) the order of probation issued on October 1, 2004, is inaccurate;

"(2) this court did not sanction or intend that the [office] of adult probation monitor the location of the probationer with any lesser level of monitoring than that provided by current, continuous, passive global positioning system . . . tracking technology; and

"(3) this court also intended to give flexibility to the [office] of adult probation over the thirty-five year term of [the defendant's] probation to accommodate technological developments which achieve at least the same level of continuous monitoring of [the defendant] as that provided by [global positioning system] technology.

"While this court does not fault in any way the [office] of adult probation for its interpretation of the order of probation, the [office] was working with an inaccurate order. The serious nature of [the defendant's] convictions and violations involving actual and likely contacts with minors, as well as a pattern of deception with the [office] of adult probation, requires constant monitoring to protect both the victim in this case and to prevent opportunities for [the defendant] to have contact with more potential victims." In conclusion, the court stated: "This court will issue a corrected order of probation accurately conveying the conditions of probation ordered on October 1, 2004."

On March 16, 2006, the date of its decision, the court issued a corrected order of probation. With regard to the electronic monitoring condition at issue, the order provided: "No contact with victim, victim's family, including grandmother, direct/indirect, not to go within one mile of victim's/victim's family residence, places of work, places of recreation, defendant to submit to and pay for (if deemed capable of paying by office of adult probation) electronic digital global positioning monitoring or other equally effective location monitoring service probation deems appropriate to enforce this restriction . . . ." Apart from this condition in the corrected order, the court slightly rephrased, yet did not appear to alter materially, corresponding conditions set forth in the 2004 order.[2] This appeal followed.

The defendant claims that the court modified the electronic monitoring condition of his probation. Specifically, the defendant claims that, in 2004, the court ordered him to submit to electronic monitoring at the discretion of the office of adult probation and that, by its 2006 order, the court required him to submit to electronic monitoring continuously for the duration of his probation. Essentially, the defendant claims that the court abused its discretion in modifying this condition of his probation because there was no good cause shown in support of the modification.[3]

The state argues that the court merely clarified the conditions of probation that had existed since 2004. The state maintains that, in 2004, the court ordered the defendant to submit to electronic monitoring continuously for the duration of his probation and that he did

---

[2] We note that the court did not expressly grant or deny the state's motion for modification in its oral ruling. The court did not sign or mark the order page affixed to the state's motion for modification.

[3] The defendant also claims in his appellate brief that the court's 2006 ruling violated his right to substantive due process under the federal and state constitutions. The defendant expressly abandoned this claim at the time of argument before this court, and we do not address it in this opinion.

not object to that condition of probation at the time of sentencing. Accordingly, the state argues that the defendant did not preserve any objection to that condition. The state further argues that there were compelling reasons in support of the court's decision to impose this condition at the time of sentencing in 2004, and, thus, the court did not abuse its discretion.

As a preliminary matter, we must resolve the issue of whether the 2006 judgment, from which the defendant appeals, *modified* or *clarified* the 2004 judgment. In conducting this analysis, we are not persuaded by the fact that the state's motion to modify initiated the proceeding that culminated in the judgment at issue. Regardless of the manner in which the state characterized its motion, "we must examine the practical effect of the trial court's ruling in order to determine its nature. Only then can we determine whether the ruling was proper. . . . A modification is defined as '[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact.' Black's Law Dictionary (6th Ed. 1990)." (Citation omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202, 655 A.2d 790 (1995). "It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. . . . There are a limited number of circumstances in which the legislature has conferred on the trial courts continuing jurisdiction to act on their judgments after the commencement of sentence . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Lawrence*, 281 Conn. 147, 153–54, 913 A.2d 428 (2007). One such circumstance is governed

by General Statutes §§ 53a-29 through 53a-34, which permit a trial court to modify the terms of probation after a sentence is imposed, provided that specified conditions are present.

"Motions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper. . . . A motion for clarification may be appropriate where there is an ambiguous term in a judgment . . . but, where the movant's request would cause a substantive modification of an existing judgment, a motion to open or to set aside the judgment would normally be necessary." (Citations omitted; internal quotation marks omitted.) *Rome* v. *Album*, 73 Conn. App. 103, 109, 807 A.2d 1017 (2002). "There is no time restriction imposed on the filing of a motion for clarification. . . . [U]nder the common law, judgments may be corrected at any time." (Citations omitted; internal quotation marks omitted.) *Holcombe* v. *Holcombe*, 22 Conn. App. 363, 366, 576 A.2d 1317 (1990). In exercising its power to clarify, a court may not change any matter of substance in a prior order. Id.; see also *Miller* v. *Miller*, 16 Conn. App. 412, 415–16, 547 A.2d 922 (substantive modification of lump sum alimony award deemed improper exercise of power to clarify), cert. denied, 209 Conn. 823, 552 A.2d 430 (1988).

Assessing the practical effect of the 2006 judgment requires us to construe not only that judgment but the 2004 judgment as well. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of the judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which

is expressed. . . . The judgment should admit of a consistent construction as a whole." (Citations omitted; internal quotation marks omitted.) *Fenton* v. *Connecticut Hospital Assn. Workers' Compensation Trust*, 58 Conn. App. 45, 51–52, 752 A.2d 65, cert. denied, 254 Conn. 911, 759 A.2d 504 (2000). "[W]e must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *Racsko* v. *Racsko*, 102 Conn. App. 90, 92, 924 A.2d 878 (2007). "[I]t assists a reviewing court to keep in mind the theory on which the case was tried and on which the trial court decided it." *Steiner* v. *Middlesex Mutual Assurance Co.*, 44 Conn. App. 415, 428, 689 A.2d 1154 (1997). "Our inquiry in interpreting the meaning of judgments is limited to that which is either expressed or implied clearly. . . . Simply put, *the issue is not the trial court's unstated intention but the intention of the trial court as gathered from all parts of the written judgment.*" (Citation omitted; emphasis added.) *Emerick* v. *Emerick*, 28 Conn. App. 794, 806, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). Thus, "the testimony of the judge who presided over the . . . proceedings regarding his intent in entering . . . orders could not be considered in construing the . . . judgment . . . ." Id.

We have thoroughly reviewed the court's oral decision following the violation of probation proceeding in 2004, as well as the court's contemporaneous written order of probation. The plain language at issue in the court's ruling and its order leaves the requirement of electronic monitoring to the discretion of the office of adult probation with the caveat that, if such monitoring is deemed appropriate, the defendant must bear the expense of it if he is capable of doing so. Neither the court's ruling nor its order evidence an intent that the defendant submit to continuous electronic monitoring, regardless of the specific type of electronic monitoring,

for the duration of his probation. Further, apart from the language used by the court, nothing in the circumstances surrounding the 2004 judgment, as they appear in the record, reflects an intent to impose electronic monitoring continuously for the duration of the probation.

The court, however, in its 2006 judgment, clearly imposed as a condition of probation that the defendant submit to electronic monitoring continuously for the duration of the probation. In rendering judgment, the court expressed its intent to rectify its 2004 order, which it deemed to be inaccurate with regard to the electronic monitoring condition. At the hearing on the state's motion to modify, both parties, as well as the defendant's probation officer, advanced differing interpretations of the electronic monitoring condition that was part of the 2004 judgment. At the conclusion of the hearing, the court indicated that its task was to determine what it meant by its order and, following its subsequent decision, issued a corrected order of probation.

Our construction and comparison of the two judgments at issue leads us to conclude that the 2006 judgment modified the earlier judgment and, thus, the conditions of probation. The judgment from which the defendant appeals introduced a new detail, which was the requirement that he submit to *continuous* electronic monitoring for the duration of his probation rather than electronic monitoring at the discretion of the office of adult probation. We do not agree that the court provided meaning to any ambiguous provision of its earlier judgment. Instead, we conclude that the court added a matter of substance that undeniably imposed an additional burden on the defendant during a lengthy term of probation. We reach this conclusion mindful that the court clearly expressed its intent merely to rectify what it deemed to be an inaccurate order issued in 2004. The court's intent, apparent in the record, is significant to

our understanding of the judgment at issue. It is, however, not dispositive of the issue of whether the court's decision constituted a modification of its earlier judgment, the issue before us. Having concluded that the court modified the defendant's probation in 2006, we next consider whether the court abused its discretion in doing so.[4]

"[P]robation is, first and foremost, a penal alternative to incarceration . . . . [Its] purpose . . . is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. . . . [P]robationers . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . .

"The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate. . . . In this regard, modifications of probation routinely are left to the office of adult probation. When the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to [General Statutes] § 53a-30." (Citations omitted; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 180–81, 842 A.2d 567 (2004); see also *State* v. *Crouch*, 105 Conn. App, 693, 699, 939

[1] Reasoning that the court clarified but did not modify its order of October 1, 2004, the state regards the present appeal to be untimely because it was not brought within the appeal period of the 2004 judgment. Although the state concedes that it has waived any objection related to the timeliness of this appeal, we note that, in light of our conclusion that the court modified its 2004 order, the state's timeliness argument is without merit.

A.2d 632 (2008). "Probation is the product of statute. . . . Statutes authorizing probation, while setting parameters for doing so, have been very often constructed to give the court broad discretion in imposing conditions. . . . The significant role of statutes and the broad discretion usually accorded courts in administering the probation process means not only that statutory limitations must be observed but also that the impact of constitutional norms must be carefully evaluated." (Citations omitted.) *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988). "In keeping with the continuing supervision and authority given [to] the court under the [relevant statutory law], the court could modify or enlarge the conditions whether any such condition had been imposed at the time of sentencing or otherwise." (Internal quotation marks omitted.) Id., 169.

General Statutes § 53a-30 (a) sets forth various conditions of probation that the court may order "[w]hen imposing sentence of probation . . . ." That statute provides in relevant part that a defendant may "be subject to electronic monitoring, which may include the use of a global positioning system . . . ." General Statutes § 53a-30 (a) (14). Interpreting § 53a-30 (a), our Supreme Court has stated: "It contains no language restricting the time in which a court may impose the condition of probation. Indeed, the only restriction that § 53a-30 (a) places on the court is the range of conditions that it can impose, namely, those enumerated in the statute. In short, the statute does not implicate the power of the trial court to impose a condition of probation but merely sets forth the conditions of probation that may be imposed." *State* v. *Fowlkes*, 283 Conn. 735, 746–47, 930 A.2d 644 (2007).

General Statutes § 53a-30 (c) provides in relevant part: "At any time during the period of probation or conditional discharge, *after hearing and for good cause shown*, the court may modify or enlarge the conditions,

whether originally imposed by the court under this section or otherwise, and may extend the period [of probation]. . . . The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any." (Emphasis added.) By its unambiguous terms, this subsection empowers a court to modify or to enlarge the conditions of probation at any time during the probation, provided that such order occurs after a hearing and upon a showing of good cause. See General Statutes § 53a-30 (c).

We afford a trial court's decision to modify the conditions of probation broad discretion. See *State* v. *Medley*, 48 Conn. App. 662, 665, 711 A.2d 1191, cert. denied, 245 Conn. 915, 718 A.2d 19 (1998). The parties, however, disagree as to what proceedings or considerations properly weighed into the court's exercise of discretion in this case. While disputing that the court modified any condition of probation in 2006, the state nonetheless maintains that good cause existed to modify probation in 2006 because the court always intended that the defendant submit to electronic monitoring for the duration of his probation. The state appears to argue that the court was free to rely entirely on its view of the evidence that had been presented at the violation of probation proceeding in 2004 in determining whether good cause existed to impose the condition of continuous electronic monitoring in 2006. The defendant argues that, in determining the issue of good cause, the court was limited to evaluating any evidence presented at the hearing in 2006.

The resolution of this disagreement hinges on our interpretation of § 53a-30 (c). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of

whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citations omitted; internal quotation marks omitted.) *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 286–87, 939 A.2d 561 (2008). Issues of statutory interpretation are afforded plenary review. See *State* v. *Casiano*, 282 Conn. 614, 620, 922 A.2d 1065 (2007).

The text of the statute is not ambiguous, and it is reasonably susceptible of only one interpretation. The phrase "after hearing and for good cause shown," interpreted in the context in § 53a-30 (c), plainly applies to a court's decision to modify probation. The statute mandates that a court conduct a hearing related to any decision to modify probation. Given that the decision to modify probation must be based on a showing of good cause, it also appears plain from the statutory language at issue that the hearing must be the forum in which the court explores the issue of whether good cause exists at the time the court is considering modifying the terms of probation.[5]

---

[5] We do not suggest that, in determining whether good cause exists at the time it is considering modification, a court may not *to any extent* rely on evidence presented and findings made in prior hearings concerning a probationer. Rather, we emphasize that the hearing related to modification

The state suggests that good cause was demonstrated by the court's statements that it had always intended that continuous electronic monitoring occur. It cannot be disputed that the court's intent was not based on any evidence or findings made during the hearing that occurred prior to the modification but apparently was based on prior judicial proceedings concerning the defendant that occurred significantly before the hearing. To interpret the statute to permit such a showing of good cause would vitiate the requirement that good cause be shown at the time that the court is considering modification. Stated otherwise, to conclude that good cause need not be demonstrated or advanced at the hearing itself, on the basis of facts and circumstances existing at the time of the hearing, would effectively render superfluous the requirement that a hearing occur. "[W]e generally reject a construction that renders any portion of a statute superfluous . . . ." (Internal quotation marks omitted.) *Evanuska* v. *Danbury*, 285 Conn. 348, 361, 939 A.2d 1174 (2008). Such an outcome also raises obvious concerns related to the defendant's right to challenge whether good cause, in fact, exists.

We have carefully reviewed what transpired during the hearing on the state's motion to modify. Primarily, the parties advanced differing interpretations of the court's 2004 order. The parties did not devote their argument to debating the merits of that order. Thus, the state argued that the court had ordered that the defendant submit to continuous electronic monitoring for the duration of his probation. In general terms, the prosecutor alluded to the factual circumstances proven at the time of the violation of probation proceeding in 2004, recalling that the defendant had, at that time, lied about his whereabouts. The prosecutor expressed her

must relate to the determination of whether good cause exists at the time of the hearing.

belief that the continuous monitoring was necessary as an objective method of verifying the defendant's whereabouts and stated that the victim's family desired to "live in peace." The prosecutor did not present any evidence and did not suggest, either implicitly or explicitly, that the defendant had engaged in any wrongdoing since the time of the earlier proceedings in 2004. Indeed, the state concedes that the defendant did not engage in any conduct between 2004 and 2006 that would cause his probation to be modified.

At the hearing, the defendant's attorney stated that the state was not basing its motion on any change of circumstances. He presented evidence from the defendant's probation officer, Jeney, who testified that the defendant had been compliant during the approximately eight months that the probation office required the defendant to submit to electronic monitoring and that, after that time, his office determined that such monitoring was not necessary.

Although the court permitted the defendant to present Jeney's testimony, it did so noting that Jeney's testimony was not relevant to the issue presented— what the court meant in its earlier order. As we have discussed previously, when the court issued its decision concerning the state's motion to modify, it did not find that the state had demonstrated good cause at the 2006 hearing. Instead, it relied entirely on its intent in issuing its order of probation in 2004.

On this record, it can hardly be disputed that the court did not base its decision to modify probation on good cause shown at, and existing at the time of, the hearing in 2006. In its appellate brief, the state aptly characterized that hearing as follows: "[T]he only issue at the rectification hearing was the meaning of the court's oral pronouncement of the defendant's global positioning system electronic monitoring condition of

probation [in 2004]." It would be fundamentally unfair to any probationer for the court to modify probation on the basis of evidence or findings that the probationer could neither explore nor challenge at the hearing related to modification but which existed solely in the court's mind. The court did not find that circumstances concerning the defendant had changed such that its prior order of probation was no longer serving its intended purposes but plainly based its decision on its own interpretation of its earlier ruling. Although the court enjoys broad discretion in modifying probation, it is limited to acting only on a showing of good cause. On the basis of the record before us, we must conclude that the court's decision was not based on good cause and, therefore, cannot stand.

The judgment is reversed and the case is remanded with direction to vacate the order of probation dated March 16, 2006, and to render judgment denying the state's motion for modification.

In this opinion the other judges concurred.