## STATE OF CONNECTICUT *v.* ROBERT G. DENYA
## (SC 18182)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

---

* This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued March 16, 2009—officially released January 26, 2010

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellant (state).

*David R. Kritzman*, for the appellee (defendant).

*Opinion*

PALMER, J. The sole issue raised by this certified appeal is whether the Appellate Court properly reversed the order of the trial court purporting to clarify a condition of probation that the trial court previously had

imposed on the defendant, Robert G. Denya, and that required the defendant to submit to electronic monitoring. In reversing the trial court's order for an abuse of discretion, the Appellate Court concluded, first, that the trial court had modified rather than clarified the conditions of the defendant's probation and, second, that the court had done so without good cause in violation of General Statutes § 53a-30.[1] *State* v. *Denya*, 107 Conn. App. 800, 812–13, 819, 946 A.2d 931 (2008). We granted the state's petition for certification to appeal limited to the issue of whether the Appellate Court properly concluded that the trial court's order constituted an improper modification of the conditions of the defendant's probation.[2] *State* v. *Denya*, 288 Conn. 906, 907, 953 A.2d 654 (2008). We agree with the state that the trial court properly clarified rather than modified the conditions of probation that it previously had imposed and, therefore, that the requirements of § 53a-30 are inapplicable. Accordingly, we reverse the judgment of the Appellate Court.

The following undisputed facts and procedural history are set forth in the opinion of the Appellate Court. "In December, 1998, the defendant pleaded guilty to three counts of risk of injury to a child . . . and three

---

[1] General Statutes § 53a-30 provides in relevant part: "(c) At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any. . . ."

Although other subsections of § 53a-30 have been the subject of recent amendments, those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we use the current revision of the statute.

[2] Our order granting certification to appeal provides: "Did the Appellate Court properly determine that the trial court abused its discretion in modifying the terms of probation regarding electronic monitoring?" *State* v. *Denya*, 288 Conn. 906, 907, 953 A.2d 654 (2008).

counts of sexual assault in the fourth degree . . . . The court [*Byrne, J.*] accepted the pleas and found the defendant guilty of these crimes. In March, 1999, the court imposed a total effective sentence of ten years incarceration, suspended after three years, followed by ten years of probation with special conditions. The court ordered the defendant to participate in any sex offender treatment or counseling deemed necessary by the office of adult probation and to register as a sex offender. The court prohibited him from having any contact with any children younger than age sixteen, the victim or any member of the victim's family.

"In March, 2001, the defendant was released from incarceration and began serving the probation portion of his sentence. In January, 2004, the defendant was arrested and charged with violating the terms of his probation on at least two specific occasions. The matter was tried [to] the court, *Mullarkey, J.*, which found that, on one occasion, the defendant was visiting an acquaintance in South Windsor at the residence she shared with a family that included two children who were younger than age sixteen. On that occasion, the defendant remained in the residence for approximately two hours with the children after they returned home from school. The court also found that, on another occasion, the defendant, who provides wallpapering services by profession, provided an estimate for and worked in a residence knowing that an eleven year old girl resided there with her family.

"At the end of the adjudicative phase of the [probation violation] proceeding, the court found that the defendant had violated the special conditions of his probation but classified the two violations as technical in nature. There was no allegation, nor any evidence, that the defendant had engaged in any type of sexual or [other] inappropriate conduct during these separate incidents. The court, however, found that the defendant had lied

about these incidents to his probation officer, Frank Jeney. The evidence was uncontroverted that Jeney instructed the defendant not to take jobs in any home where a child resided and that he was to maintain for review by Jeney an activity log, attesting to his whereabouts when away from home. When Jeney learned about the incident in South Windsor and confronted the defendant, the defendant first told Jeney that he was never in the residence when the children were there and, later, stated that he had immediately departed from the residence as soon as the children returned home from school. Additionally, the evidence was uncontroverted that the defendant informed Jeney about the job in West Hartford but, in his activity log, concealed the fact that there was at least one child living at that residence.

"In the dispositional phase of the violation of probation proceeding, the court described the two instances as more than incidental in nature. The court deemed the incidents to be quite troublesome because the defendant attempted to conceal them from Jeney and, with regard to both instances, they occurred in a residence where children lived rather than in a public place. The court stated that 'this deceptive behavior on his part makes the court believe that the rehabilitative and beneficial aspects of probation are no longer being met.'

"In an oral ruling,[3] the court stated: 'I am going to reopen the original sentence [and] reimpose the original sentence of ten years, suspended after three [years]. However, I am going to increase the probation to the maximum term of thirty-five years as well as order sex offender registration, which, in your case, can be for life . . . [a]s well as giving a DNA [sample] and other identification samples to the department of public

---

[3] We hereinafter refer to this ruling as the court's 2004 oral ruling or the oral ruling.

safety. My point here is, by my calculations, even if I gave you the maximum sentence today, you would be out in 5.9 years. This probation will carry you until you are eighty-nine [years old].

" '[A] condition of that probation is [that] you will not have any contact directly [or] indirectly with the victim, her family, including her grandmother. You will not go within one mile of their residences, places of work, places of recreation and those places [of] schooling. Those places will change probably over the next thirty-five years. . . . [Y]ou have already served two years of probation, [so your term of probation will] be about thirty-three years. And the [office of adult] probation . . . will update [the victim and her family].

" 'Number two, you will submit to and pay for such electronic digital global positioning or whatever other service [the office of adult] probation deems appropriate, and if [it] deem[s] you capable, you will pay for such service to enforce the restrictions on your going anywhere near this family.

" 'As far as your work is concerned, you are banned from working or estimating your jobs in private residences, schools, day [care] centers, parks and [recreation areas] or any other place where children, that means, in this instance, people under the age of eighteen, may live, engage in recreation, schooling . . . [or] job training.

" 'You will take such sex offender counseling and treatment as deemed appropriate, continue with [William Hobson, a sex offender treatment provider] and such additional or different treatment as determined necessary by the [office of adult probation] after [it] hear[s] from him.

" '[Only a judge] . . . is allowed to modify any of your probation [conditions] . . . . So . . . if Mr. Hob-

son determines that you can reside in a house where children are or something else, then you have to contact your probation officer and . . . your attorney, come back to court, [where] some judge will have a hearing and decide. . . . [Mr. Hobson cannot] modify probation, only a judge can.' Finally, the court set specific guidelines concerning the defendant's visits with his granddaughter.

"The court [rendered judgment thereon modifying the conditions of the defendant's probation and] issued a written order of probation[4] [the latter of which] was signed by a court clerk. [This] order set forth the several conditions of probation imposed by the court at the conclusion of the dispositional phase of the violation of probation proceeding. . . . [This] order, dated October 1, 2004, contained the following [relevant] language: 'It is ordered and adjudged that . . . the defendant must submit to and pay for any electronic/digital monitoring as deemed appropriate by the office of adult probation . . . .' The defendant did not appeal from the court's judgment.

"On December 15, 2005, the state filed a pleading entitled 'Motion to Modify Probation,' the body of which [provides]: 'Pursuant to . . . Practice Book [§] 43-29A, the [s]tate respectfully requests this [c]ourt [to] modify [the defendant's] probation. The [s]tate requests [that the office of adult] probation return [the defendant] to electronic monitoring.' The court . . . subsequently held a hearing concerning the state's motion to modify. During that hearing, the prosecutor represented that, in September or October, 2005, she learned from the victim's attorney that the office of adult probation had discontinued its electronic monitoring of the defendant and that she was unsuccessful in her attempts to have

---

[4] We hereinafter refer to this order as the 2004 order, the 2004 order of probation, or the 2004 written order of probation.

such monitoring reinstated. The prosecutor stated that the court, in its 2004 [order of probation], had not afforded the office of adult probation discretion to terminate electronic monitoring but merely discretion to determine what type of electronic monitoring system to utilize. Recalling, briefly and generally, the factual circumstances related to the violation of probation proceeding in 2004, the prosecutor stated that continuous monitoring of the defendant for the duration of his probation was desired by the state and the victim's family as an objective way of keeping track of the defendant's whereabouts. The state did not present any evidence in support of its motion.

"The defendant's attorney argued that the court had not ordered the defendant to submit to continuous electronic monitoring for the duration of his probation but had afforded the office of adult probation discretion with regard to the use of such monitoring during the probationary term. The defendant's attorney represented that the defendant had paid for electronic monitoring until his probation officer told him that such monitoring was no longer required. The defendant's attorney presented testimony from the defendant's probation officer, Jeney. [Jeney] testified that, generally, the office of adult probation monitors probationers who must submit to monitoring for six months and, if such persons are compliant, electronic monitoring is no longer used. Jeney further testified that electronic monitoring of the defendant occurred for almost eight months, during which time the defendant was compliant. Jeney testified that he and his supervisor made the decision to terminate the monitoring and that he believed that the court, in its 2004 order [of probation], had given the office of adult probation discretion to make such a decision.

"At the conclusion of the hearing, the court framed the issue before it, stating that its only task was to

determine what it meant by the [2004] order [that] it had issued following the violation of probation proceeding . . . . On March 16, 2006, the court issued a memorandum of decision entitled, 'Memorandum of Decision Rectification of Order of Probation Dated October 1, 2004.' The court stated in its ruling: 'A review of [the] court's notes of the October 1, 2004 hearing on the violation of probation, the sentencing transcript of that same date, the court monitor's audiotapes of that same date and the [2004] order of probation lead to the following conclusions:

" '(1) the order of probation issued on October 1, 2004, is inaccurate;

" '(2) [the] court did not sanction or intend that the [office] of adult probation monitor the location of the [defendant] with any lesser level of monitoring than that provided by current, continuous, passive global positioning system . . . tracking technology; and

" '(3) [the] court also intended to give flexibility to the [office] of adult probation over the thirty-five year term of [the defendant's] probation to accommodate technological developments which achieve at least the same level of continuous monitoring of [the defendant] as that provided by [global positioning system] technology.

" 'While [the] court does not fault in any way the [office] of adult probation for its interpretation of the [2004] order of probation, the [office] was working with an inaccurate order. The serious nature of [the defendant's] convictions and violations involving actual and likely contacts with minors, as well as a pattern of deception with the [office] of adult probation, requires constant monitoring to protect both the victim in this case and to prevent opportunities for [the defendant] to have contact with more potential victims.' In conclusion, the court stated: '[The] court will issue a corrected

order of probation accurately conveying the conditions of probation ordered on October 1, 2004.'

"On March 16, 2006, the date of its [memorandum of] decision, the court issued a corrected order of probation.[5] With regard to the electronic monitoring condition at issue, the [corrected] order [of probation] provided: 'No contact with victim, victim's family, including grandmother, direct/indirect, not to go within one mile of victim's/victim's family residence, places of work, places of recreation, defendant to submit to and pay for (if deemed capable of paying by office of adult probation) electronic digital global positioning monitoring or other equally effective location monitoring service probation deems appropriate to enforce this restriction . . . .' Apart from this condition in the corrected order [of probation], the court slightly rephrased, yet did not appear to alter materially, corresponding conditions set forth in the 2004 order [of probation]." *State* v. *Denya*, supra, 107 Conn. App. 802–808.

The defendant appealed to the Appellate Court, claiming, inter alia, that the trial court's 2006 corrected order constituted a modification rather than a clarification of its 2004 order. See id., 808. Specifically, the defendant contended that the 2004 order had directed him to submit to electronic monitoring for whatever period of time the office of adult probation deemed appropriate, and the 2006 order modified the 2004 order by requiring him to submit to electronic monitoring continuously for the duration of his probation. Id. The defendant further maintained that the trial court abused its discretion in issuing the 2006 order because the state had failed to demonstrate good cause for the modification. Id., 801–802, 808.

The Appellate Court agreed with the defendant's contention that the trial court's 2006 order was a modifica-

---

[5] We hereinafter refer to this order as the corrected order of probation, the 2006 corrected order, or the 2006 order.

tion of its 2004 order.[6] Id., 812. In support of this conclusion, the Appellate Court explained: "We have thoroughly reviewed the court's [2004] oral [ruling] following the violation of probation proceeding . . . as well as the court's contemporaneous [2004] written order of probation. The plain language at issue in the court's [2004 oral] ruling and its [2004] order leaves the requirement of electronic monitoring to the discretion of the office of adult probation with the caveat that, if such monitoring is deemed appropriate, the defendant must bear the expense of it if he is capable of doing so. Neither the court's [2004 oral] ruling nor its [2004 written] order [of probation] evidence[s] an intent that the defendant submit to continuous electronic monitoring, regardless of the specific type of electronic monitoring, for the duration of his probation. Further, apart from the language used by the [trial] court, nothing in the circumstances surrounding the 2004 [order], as they appear in the record, reflects an intent to impose electronic monitoring continuously for the duration of the probation."[7] Id., 811–12. The Appellate Court also

---

[6] We note that, before commencing its analysis of the defendant's claim, the Appellate Court stated: "In conducting this analysis, we are not persuaded by the fact that the state's motion to modify [probation] initiated the proceeding that culminated in the [2006 corrected order of probation] at issue. Regardless of the manner in which the state characterized its motion, [the court] must examine the practical effect of the trial court's ruling in order to determine its nature. Only then can [the court] determine whether the ruling was proper." (Internal quotation marks omitted.) *State* v. *Denya*, supra, 107 Conn. App. 809. We agree with this observation of the Appellate Court. See *Mickey* v. *Mickey*, 292 Conn. 597, 605, 974 A.2d 641 (2009) ("we look to the substance of the relief sought [in] the [claimant's] motion rather than the form to determine whether a motion is properly characterized as one seeking a clarification or a modification [of an order or a judgment]" [internal quotation marks omitted]).

[7] The Appellate Court acknowledged that the trial court, in its 2006 memorandum of decision, "clearly [had] expressed its intent merely to rectify what it deemed to be an inaccurate order issued in 2004." *State* v. *Denya*, supra, 107 Conn. App. 812. The Appellate Court further observed, however, that, although the intent of the trial court was "significant to [the Appellate Court's] understanding of the [2006 corrected order of probation]"; id., 812–13; that intent was "not dispositive of the issue of whether the [trial] court's [2006 order] constituted a modification of its earlier [2004 order]

explained that any such modification must be predicated on a showing of good cause in accordance with § 53a-30 (c) and that the trial court's modification of the conditions of the defendant's probation was not supported by such a showing. Id., 815–19. Consequently, the Appellate Court reversed the trial court's 2006 corrected order of probation and remanded the case to that court with direction to vacate the corrected order of probation and to render judgment denying the state's motion to modify. Id., 819.

On appeal to this court, the state claims that the Appellate Court improperly determined that the 2006 order constituted a modification rather than a clarification of the 2004 order. The state acknowledges that the 2004 *written* order of probation unambiguously authorizes the office of adult probation to terminate the requirement of electronic monitoring in its discretion. The state maintains, however, that the 2004 *oral* ruling unambiguously required the defendant to submit to electronic monitoring during the entire term of his probation and that the 2004 oral ruling takes precedence over the 2004 written order of probation, which was signed by a court clerk. The state further contends that the trial court, in issuing its 2006 order, merely corrected a clerical error in the 2004 order that had caused the office of adult probation to believe, erroneously, that the duration of the defendant's electronic monitoring was a matter within its discretion.[8]

---

. . . ." Id., 813. The Appellate Court concluded that the 2004 order was unambiguous and that it did not provide for continuous electronic monitoring of the defendant. See id., 811–12. Accordingly, the Appellate Court also concluded that the 2006 order imposing continuous monitoring "added a matter of substance that undeniably imposed an additional burden on the defendant during a lengthy term of probation" and, therefore, that the 2006 order constituted a modification of the 2004 order. Id., 812.

[8] See *Connecticut National Bank* v. *Gager*, 263 Conn. 321, 326, 820 A.2d 1004 (2003) (because clerical error "involves the failure to preserve or correctly represent in the record the actual decision of the court . . . it is clerical error if the judgment as recorded fails to agree with the judgment in fact rendered" [internal quotation marks omitted]).

We conclude that, under the circumstances presented, the trial court's 2004 oral ruling is controlling. We also conclude that the trial court properly clarified an ambiguity in that ruling when it issued its 2006 corrected order of probation. We therefore agree with the state that the Appellate Court improperly reversed the trial court's 2006 corrected order of probation.

Before turning to the merits of the state's claim, we first set forth the legal principles that govern our resolution of that claim. "[M]otions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 244, 796 A.2d 1164 (2002); see also *Mickey* v. *Mickey*, 292 Conn. 597, 604, 974 A.2d 641 (2009) (when ambiguous term exists in order or judgment, "a motion for clarification is an appropriate procedural vehicle" for resolving ambiguity). There is no time limitation for filing a motion for clarification. *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 244.

Indeed, "courts have continuing jurisdiction to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . [Thus] [w]hen an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events . . . a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . . In cases in which execution of the original judgment occurs over a period of years, a motion for clarification is an appropriate procedural vehicle to ensure that the original judgment is properly effectuated. . . . Motions for clarification may not, however, be used to modify or to alter the substantive

terms of a prior judgment . . . and we look to the substance of the relief sought by the motion rather than the form to determine whether a motion is properly characterized as one seeking a clarification or a modification." (Citations omitted; internal quotation marks omitted.) *Mickey* v. *Mickey*, supra, 292 Conn. 604–605; cf. *Rome* v. *Album*, 73 Conn. App. 103, 109, 807 A.2d 1017 (2002) ("[when] the movant's request would cause a substantive modification of an existing judgment, a motion to open or set aside the judgment would normally be necessary").

Our determination of whether the trial court's 2006 order clarified or modified the 2004 order requires us to construe those orders. "Because [t]he construction of [an order or] judgment is a question of law for the court . . . our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 91–92, 952 A.2d 1 (2008).

Furthermore, because the sentence in a criminal case generally is imposed orally in open court; see, e.g., *State* v. *Lindsay*, 109 Conn. 239, 243, 146 A. 290 (1929); the written order or judgment memorializing that sentence, including any portion pertaining to probation, must conform to the court's oral pronouncement. E.g., *United States* v. *Kindrick*, 576 F.2d 675, 676–77 (5th Cir. 1978) ("[t]his [c]ourt has long faithfully adhered to the rule that any variance between oral and written versions of

the same sentence will be resolved in favor of the oral sentence"); *Burrell* v. *State*, 626 P.2d 1087, 1089 (Alaska App. 1981) ("[when] there is a conflict between the written order of probation and the oral pronouncement of sentence, the latter ordinarily controls"); *S.S.M.* v. *State*, 875 So. 2d 763, 763 (Fla. App. 2004) ("a written probation order must conform with the trial court's oral pronouncements at sentencing"); *State* v. *Hess*, 533 N.W.2d 525, 528 (Iowa 1995) (it is "[a] rule of nearly universal application" that "[when] there is a discrepancy between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement of sentence controls" [internal quotation marks omitted]); *State* v. *Hutchinson*, 593 A.2d 666, 667 (Me. 1991) ("[when] a discrepancy exists between the oral pronouncement of sentence and the written judgment and commitment, it has long been the law that the oral pronouncement of sentence controls"); *State* v. *Perry*, 136 Wis. 2d 92, 114, 401 N.W.2d 748 (1987) ("[when] a conflict exists between a court's oral pronouncement of sentence and a written judgment, the oral pronouncement controls"); *Chapman* v. *State*, 728 P.2d 631, 633 (Wyo. 1986) (trial court's oral probation order controls over written judgment). Contra *Clapper* v. *State*, 562 S.W.2d 250, 251 (Tex. Crim. App. 1978) ("a written order revoking probation controls over an oral pronouncement of the trial judge"). The propriety of this conclusion is buttressed by the fact that the written order ordinarily is prepared and signed by the court clerk rather than by the judge; see, e.g., *State* v. *Lindsay*, supra, 243; see also *Commissioner of Correction* v. *Gordon*, 228 Conn. 384, 392, 636 A.2d 799 (1994) (judgment mittimus is merely clerical document certified by clerk authorizing delivery of sentenced prisoner to custody of commissioner of correction, and when wording of mittimus conflicts with sentence as pronounced by trial court, court's pronouncement prevails); which

is the procedure that was followed in the present case. Consequently, as a general matter, any discrepancy between the oral pronouncement of sentence and the written order or judgment will be resolved in favor of the court's oral pronouncement.

Finally, because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. E.g., *Aronov* v. *Chertoff*, 536 F.3d 30, 38 (1st Cir. 2008), rev'd on other grounds sub nom. *Aronov* v. *Napolitano*, 562 F.3d 84 (1st Cir. 2009) (en banc); *ABT Building Products Corp.* v. *National Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 114–15 (4th Cir. 2006); *United States* v. *Spallone*, 399 F.3d 415, 423 (2d Cir. 2005); *G.J.B. & Associates, Inc.* v. *Singleton*, 913 F.2d 824, 831 (10th Cir. 1990); *Holmberg* v. *Holmberg*, 578 N.W.2d 817, 825 (Minn. App. 1998), aff'd, 588 N.W.2d 720 (Minn. 1999); *Emory* v. *Pendergraph*, 154 N.C. App. 181, 184–85, 571 S.E.2d 845 (2002); *Estate of Schultz* v. *Schultz*, 194 Wis. 2d 799, 808–809, 535 N.W.2d 116 (App. 1995); see also *Missouri* v. *Jenkins*, 495 U.S. 33, 49–50, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1990) ("[t]he Eighth Circuit surely knows more than we do about the meaning of its orders, and we accept its action for what it purports to be"). Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable.

Applying these principles, we conclude, first, that the trial court's 2004 oral ruling represents the operative or controlling "order." At that time, the trial court articulated the various additional probationary conditions to be imposed on the defendant, including the requirement of electronic monitoring. The 2004 written order of pro-

bation was intended merely to reflect the court's oral pronouncement; indeed, it was signed by a court clerk rather than by the judge himself. Thus, it is the 2004 oral ruling that governs our resolution of the issue raised by the state's claim. Consequently, although the 2004 written order of probation unambiguously authorizes the office of adult probation to discontinue the electronic monitoring of the defendant if and when that office deems it appropriate to do so, that portion of the 2004 written order is effective only to the extent that it accurately reflects the actual intent of the trial court as expressed in its 2004 oral ruling or, if necessary, in a subsequent clarifying order.

We therefore turn to the following pertinent language of the court's 2004 oral ruling: "[The defendant] will submit to and pay for such electronic digital global positioning or whatever other service [the office of adult] probation deems appropriate, and if [it] deem[s] you capable, you will pay for such service to enforce the restrictions on your going anywhere near [the victim's] family." We conclude that this language is ambiguous with respect to the precise role of the office of adult probation insofar as the electronic monitoring requirement is concerned. On the one hand, the language of the 2004 oral ruling requiring the defendant to submit to "such" monitoring or surveillance as the office of adult probation deems appropriate reasonably may be understood to mean that the defendant shall submit to *some* kind of continuous monitoring, with the office of adult probation responsible for determining the *particular* kind of monitoring to be used. On the other hand, the 2004 oral ruling plausibly may be read to vest the office of adult probation with discretion to determine whether *any* electronic monitoring is appropriate. Thus, we disagree with the conclusion of the Appellate Court that the 2004 oral ruling unambiguously authorizes the office of adult probation to discontinue the

electronic monitoring in its discretion, and we also disagree with the state's contention that the language unambiguously bars the office of adult probation from terminating the monitoring.

We also conclude that the trial court properly determined that, in issuing its 2004 oral ruling, it had intended to require that the defendant submit to electronic monitoring for the duration of his probationary period, and that the discretion of the office of adult probation was limited to deciding what type of monitoring was most appropriate. There is nothing in the record of the proceeding at which the trial court issued its 2004 oral ruling to suggest that the court's 2006 clarification of that ruling was arbitrary or otherwise unreasonable. Indeed, the record fully supports the court's clarification of its earlier oral ruling and reflects the court's concern over the defendant's failure to be truthful with his probation officer regarding his contact with children generally and the ongoing need to ensure that the defendant stay away from the victim and her family specifically. Although we acknowledge that the requirement of a thirty-five year period of monitoring may be viewed as onerous, under the circumstances, we cannot say that it is so long as to call into question the trial court's 2006 determination that that period was, in fact, the period contemplated by the court's 2004 oral ruling.[9] Because the trial court was best situated to interpret its own order, and because the court's clarification of its 2004 oral ruling was reasonable,[10] we agree with the

---

[9] We note that the defendant is free to seek a modification of the conditions of his probation pursuant to § 53a-30. Thus, although the thirty-five year monitoring period is indeed a long one, at some point, the court may be persuaded to reduce or even to terminate it. Of course, the decision whether to grant such a motion falls within the sound discretion of the trial court, and we therefore express no view on the merits of any such request.

[10] In reaching its conclusion that the 2006 order constitutes an improper modification of the 2004 order, the Appellate Court relied, inter alia, on certain language from its decision in *Emerick* v. *Emerick*, 28 Conn. App. 794, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). In particular, the Appellate Court quoted the following statements in *Emerick*:

state that the Appellate Court improperly reversed the trial court's 2006 corrected order of probation.[11]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's corrected order of probation.

In this opinion the other justices concurred.

"Our inquiry in interpreting the meaning of judgments is limited to that which is either expressed or implied clearly. . . . Simply put, the issue is not the trial court's unstated intention but the intention of the trial court as gathered from all parts of the written judgment. . . . Thus, the testimony of the judge who presided over the . . . proceedings regarding his intent in entering . . . orders could not be considered in construing the . . . judgment . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Denya,* supra, 107 Conn. App. 811, quoting *Emerick* v. *Emerick,* supra, 806. In *Emerick,* a divorce action, the defendant, Roger Emerick, sought to call as a witness the trial judge who had issued certain orders in the case, claiming that that judge's testimony was necessary to ascertain the meaning of those orders. *Emerick* v. *Emerick,* supra, 806. The trial court denied Emerick's request, and, on appeal, the Appellate Court concluded that the trial court properly denied that request. Id. In *Emerick,* however, there is no indication that the orders at issue were ambiguous. See generally id. *Emerick,* moreover, stands only for the proposition that the intent of a judge who issues an ambiguous order is not ascertained through the testimony of that judge but by way of a proper motion. We therefore disagree with the Appellate Court that *Emerick* supports the conclusion that a trial judge who issues an ambiguous order cannot be called on, as in the present case, to resolve that ambiguity by issuing a clarifying order.

[11] In light of our conclusion that the trial court properly interpreted its ambiguous 2004 oral ruling, the court's action in doing so constituted a clarification rather than a modification of that ruling. Consequently, § 53a-30, which pertains only to the modification of the conditions of probation; see footnote 1 of this opinion; does not apply.